COMMONWEALTH *vs.* IMBRIAN HASSAN.

Essex.    January 21, 1920. — February 24, 1920.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Practice, Criminal,* Requests for instructions.    *Rules of Court.*

It is reasonable to require that requests for instructions at a trial for homicide shall be presented before the closing arguments of counsel are begun.

Although the rules of the Superior Court of 1915 by their terms are restricted in operation to civil business of the court, Rule 45, requiring that requests for instructions or for rulings shall be made in writing before the closing arguments unless later special leave is given to present further requests, should be adopted in trials of criminal cases by analogy when applicable. By RUGG, C. J.

It is not error for a judge presiding at the trial of an indictment for manslaughter to refuse to receive requests by the defendant for instructions to be given to the jury if those requests are filed after the closing argument for the defendant and during the argument for the Commonwealth, where the charge to the jury is full and adequate and covers every issue on trial and no contention was made at its close that it was incomplete upon any issue raised at the trial.

It is proper for the judge presiding at a trial for manslaughter to refuse to give to the jury an instruction which is not applicable to the evidence at the trial.

At the trial of an indictment against two defendants jointly charged with manslaughter, each defendant accused the other of the homicide and there was evidence that cartridges containing bullets such as were found in the body of the decedent were found concealed in a shoe of one defendant while he was in jail the day after the homicide. There was no evidence relating to whether there was any explanation by him of this fact at a hearing in the lower court. In the Superior Court, that defendant introduced evidence in explanation. The attorney for the other defendant in effect argued that no explanation of this fact had been given in the "lower court." The district attorney made no such comment. The defendant in whose shoe the cartridges were found made no objection to the argument of the attorney for the co-defendant, but asked in a request for an instruction that his failure to give an explanation in the lower court could not be considered against him, and relied on St. 1912, c. 325. The request was denied and that defendant excepted. *Held,* that the exception must be overruled, because no objection was made at the trial to the argument of the co-defendant and because St. 1912, c. 325, had no application to such argument.

At the trial of an indictment, it is proper to refuse to instruct the jury that "Each
juror shall render his own independent judgment and, although giving due con-
sideration to the opinions of the other jurors, he shall not acquiesce in the
same or be unduly influenced thereby."

INDICTMENT, found and returned in the county of Essex on
January 19, 1919, charging that Imbrian Hassan and Suleman
Hassan on October 28, 1918, assaulted and beat Alli Hassan with
intent to murder him and by such assault and beating did kill and
murder him.

In the Superior Court, the defendants were tried jointly before
*Callahan*, J. The district attorney filed a statement that he would
no further prosecute the indictment against either defendant in
so far as it charged him with murder in the first degree.

At the trial, there was evidence that shortly before the shoot-
ing Suleman Hassan had a quarrel with Alli Hassan, who was
a brother of the defendant Imbrian, in a coffee house located
about fifty yards from the place of the shooting, resulting in Sule-
man striking him upon the head with a bottle, and that they were
separated by other people there.

The contention of Suleman Hassan was that the defendant
Imbrian Hassan and his brother Alli left the coffee house ahead of
him and proceeded to their lodging house near by, where Im-
brian took a revolver out of his trunk and with Alli started back
toward the coffee house; that Suleman in the meantime had left
the coffee house and was standing upon the sidewalk when the
two brothers came toward him, Alli being about twenty feet
ahead of Imbrian and unarmed; that Alli took hold of Suleman
and he (Suleman) grabbed Alli, and, as they were swinging and
wrestling around, Imbrian fired at Suleman, but by mistake
shot Alli.

The contention of the defendant Imbrian was that Suleman was
ejected from the coffee house by the proprietor, that later Alli
left the place for the purpose of securing the arrest of Suleman for
assault; that as he approached Suleman he said, "I am going to the
court or police station to have you arrested for what you did;" and
that Suleman replied "Do you suppose that I am going to let you
go to the police station?" and immediately put his hand in his
pocket and pulled out a revolver and shot Alli.

There also was evidence that on the day following the shooting,

while the defendant Imbrian was in jail, an officer discovered two cartridges hidden in his shoe. At the trial in the Superior Court, the defendant Imbrian offered an explanation of the presence of the cartridges in his shoe. The bill of exceptions states, "The attempt to conceal the cartridges was given much weight in their arguments by the attorney for Suleman and the district attorney." A part of the argument of the attorney for Suleman was as follows:

"They (attorneys for Imbrian) knew where Abraham (Imbrian) put the cartridges, and so, hard put to it, they have evolved a certain scheme. Usually when a case is tried in the lower court or when a complaint is made in the lower court an attempt is made to keep a man from going to jail upon a charge of first degree murder, because if the charge of first degree murder is sustained — that is, if the court finds probable cause to believe that he is guilty — he will be held for action by the grand jury. During the period that he is held, he will not be admitted to bail and usually, if counsel have anything in the way of evidence that is convincing, that can explain away that possible appearance of guilt against the client, they are produced; and we tried this case pretty fully in the lower court. So [counsel for Imbrian] . . . know that they have got to have some explanation of the bullets in the shoe, and I waited with considerable patience to find out what it was going to be, and the answer came when the opening for the defendant was made. . . . That was that a young outlaw from the West, a nephew (Kako) of Abraham (Imbrian) Hassan's, had come on here to your peaceful community, and had brought with him the gun for business, if necessary, and the blackjack for pleasure was his testimony."

Counsel for the defendant Imbrian did not interrupt the attorney for Suleman during this argument and made no objection to the line of argument during the argument or at the close thereof. The district attorney in his argument made no comment on the failure of the defendant Imbrian to offer an explanation of the presence of the cartridges before the trial.

Other evidence and the circumstances under which the defendant Imbrian Hassan presented to the judge certain requests for instructions are described in the opinion.

In the course of the charge, the judge instructed the jury as follows:

"Now if Suleman fired the fatal shot, you need give no heed to

what I am about to say. It is the theory of Suleman that Imbrian with the revolver in his hand, observing a struggle between Suleman and Alli, the latter of whom was hit upon the head by a bottle by Suleman some time before, determined to kill Suleman, fired, and by accident slew his own brother Alli.

"What is the legal status of the perpetrator of a homicide in such circumstances? The law's solicitude for human life is so great that if one man slay another by accident while he is unlawfully slaying or attempting to slay a third, the intent with which he acts against his intended victim is transferred to and made a part of the accidental act and he is held guilty in the same degree as he would have been held if his purpose against his intended victim had been accomplished.

"So here, if you should find that Alli was in fact killed by Imbrian by accident while he, Imbrian, was attempting to kill Suleman, it would be your duty to find him guilty of murder as charged in this indictment, or of manslaughter, — of murder if there was malice aforethought in the act, of manslaughter if the homicide was committed in the course of a combat or under great and sudden provocation."

The jury found the defendant Suleman Hassan not guilty, and found the defendant Imbrian Hassan guilty of manslaughter; and the defendant Imbrian Hassan alleged exceptions.

St. 1912, c. 325, is as follows: "At the trial of a criminal case in the Superior Court, upon indictment or appeal, the fact that the defendant did not testify at the preliminary hearing or trial in the lower court, or that at such hearing or trial he waived examination or did not offer any evidence in his own defence, shall not be used as evidence against him, nor be referred to or commented upon by the district attorney or other prosecuting officer."

*E. J. Carney,* (*C. A. Green* with him,) for the defendant.

*D. C. Manning,* Assistant District Attorney, for the Commonwealth.

RUGG, C. J. The defendant was indicted jointly with one Suleman Hassan for the murder of Alli Hassan, a brother of the defendant. He was found guilty of manslaughter and Suleman Hassan was acquitted. There seems to have been little if any controversy at the trial concerning the fact that Alli Hassan was killed by the shot of a revolver feloniously fired by one of the

·other of the two persons indicted. Each attempted to put the blame upon the other.

During the argument of the district attorney, counsel for the defendant handed thirteen written requests for instructions to the clerk of the court, who presented them to the presiding judge. Counsel for the defendant neither said nor did anything further about the requests until after the charge, when he orally called the attention of the judge to his failure to give requests numbered 4, 7 and 13. The judge refused to consider them on the ground that they were not seasonably presented. No exception was taken to the charge in any particular, but exception was saved to the refusal to grant these three requests.

Comprehensive codes of rules of the Superior Court were adopted in 1859, 1874, 1886, 1900, 1906 and 1915. The first reference to the subject of requests for rulings appears in Rule 37 of those adopted in 1874. It is that "All requests for instructions shall be made in writing." It appears in the same form in Rule 50 of the rules of 1886. In Rule 48 of the rules of 1900 words were added so that then it read, "All requests for instructions shall be made in writing before the closing arguments unless special leave is given to present further requests later." In Rule 45 of the rules of 1906, the form is as follows: "Requests for instructions or for rulings in trials with or without jury shall be made in writing before the closing arguments unless special leave is given to present further requests later." In the rules of 1915 substantially the same form occurs. The rules of 1915 alone of these several codes of rules appear by their terms to be restricted in operation to civil business of the court.

So far as we are aware, there never has been an express rule of the Supreme Judicial Court requiring requests for instructions to be in writing and handed to the presiding justice before arguments. It has been the established practice of this court for many years that no party as matter of right may present requests for instructions in any other way or at any other time than in writing and before arguments.

Before the adoption of any formal rule in the Superior Court, it had become the settled and recognized practice that requests for instructions could as matter of right be presented only before argument. As early as 1846, in *Dole* v. *Thurlow*, 12 Met. 157,

at page 164, the practice was declared by Chief Justice Shaw to be that requests for rulings at the close of the charge were too late and that they ought to be presented in season at least to apprise adverse counsel of views of the law contended for. Manifestly this could be done only by bringing them forward before arguments. It was so stated in express terms by Chief Justice Gray in *Ela* v. *Cockshott*, 119 Mass. 416, in 1876. In *McMahon* v. *O'Connor*, 137 Mass. 216, it was said by Mr. Justice Holmes in 1884 that "It is the undoubted right of parties to present requests for rulings and to have them passed upon. But the right is not infringed by requiring it to be exercised in a reasonable way." Whether and how to deal with requests presented after the beginning of arguments was said according to settled practice to rest in the discretion of the trial judge. In *Brick* v. *Bosworth*, 162 Mass. 334, are found these words by Mr. Justice Knowlton: "a party must seasonably present a request in writing to the judge, and the ordinary rule of practice which has been approved by this court is that such a request must be made before the arguments."

This salutary rule of practice prevails in the trial of criminal cases. It was recognized as relevant in *Commonwealth* v. *Boutwell,* 162 Mass. 230.

It is obviously reasonable that requests for instructions, if they are to be an aid in the administration of justice in the trial both of criminal and civil cases, ought to be presented before the arguments. It is essential that the judge be given adequate opportunity to pass upon the soundness of requested rulings. In many cases it is of importance that counsel may know what is likely to be the instruction of the judge upon controverted questions of law, so that remarks to the jury may be shaped accordingly.

Even though the rule of court does not in terms relate to criminal cases, it should be adopted in such trials by analogy when applicable. Uniformity in practice is highly desirable so far as reasonably practicable. See *Strout* v. *United Shoe Machinery Co.* 215 Mass. 116, 119, and *Renwick* v. *Macomber*, 233 Mass. 530, 534. It is manifest from this review of decisions that the rule of the Superior Court respecting the time for presentation of requests for rulings aims at scarcely more than the embodiment of the general practice existing without express rule.

The rule of court and the general practice apart from rule do not

prevent the presiding judge from receiving and passing upon requests presented at any time before the jury retire, if he elects to do so. But he is under no obligation so to do. *Robertson* v. *Boston & Northern Street Railway,* 190 Mass. 108. *Pelatowski* v. *Black,* 213 Mass. 428.

Doubtless in the trial of indictments charging crimes the judicial conscience would be peculiarly sensitive to see that no error of omission or of commission in his charge should go unremedied. But it would give ground for great abuses if requests for instructions could be presented as of right after the beginning of arguments.

The assumption may be indulged that the salient points of the case will be adequately covered by the charge; but if at its close, substantial omissions or errors are observed, the attention of the judge may be drawn to them, and upon refusal or neglect to give correct and adequate instructions upon important factors in the case, the right to exceptions thus adequately protects the rights of parties. *Brick* v. *Bosworth,* 162 Mass. 334, 338.

There was no error in refusing to receive the requests under the circumstances here disclosed. The charge was full and adequate, covering every issue in the case. No contention was made at its conclusion that it was incomplete upon any question raised at the trial.

If (without establishing any precedent for the future) the requests be considered on their merits, no error is shown. The fourth request, to the effect that if the defendant under a reasonable belief that his brother was in immediate danger at the hand of Suleman Hassan, shot at the latter and by mistake killed his brother, he was not guilty, was not applicable to the evidence. Such an issue does not appear to have been tried. *Plummer* v. *Boston Elevated Railway,* 198 Mass. 499, 516. *Commonwealth* v. *Boutwell,* 162 Mass. 230, 232.

The seventh request was to the effect that failure of the defendant to explain the presence of cartridges in his shoe at the lower court trial could not be considered against him. Reliance is placed upon St. 1912, c. 325, which provides that failure to testify or to offer evidence in the lower court shall not be used as evidence against a defendant in the Superior Court or commented on by the district attorney or other prosecuting officer. No evidence

appears to have been offered on the point, but counsel for Suleman Hassan, indicted jointly and tried with the defendant, made reference to the subject in his argument. If this was regarded as improper, the attention of the judge should have been called to it at once. *Commonwealth* v. *Richmond,* 207 Mass. 240, 250. *London* v. *Bay State Street Railway,* 231 Mass. 480, 486. Moreover, no argument whatsoever was made upon the point by the district attorney or prosecuting officer who alone is within the purview of the statute. It does not apply to arguments made in behalf of a co-defendant. *Commonwealth* v. *Goldstein,* 180 Mass. 374.

The thirteenth request that "Each juror shall render his own independent judgment and, although giving due consideration to the opinions of the other jurors, he shall not acquiesce in the same or be unduly influenced thereby," manifestly was unsound and inapposite. *Commonwealth* v. *Tuey,* 8 Cush. 1. *Highland Foundry Co.* v. *New York, New Haven, & Hartford Railroad,* 199 Mass. 403. *Simmons* v. *Fish,* 210 Mass. 563, 570, 571.

*Exceptions overruled.*