COMMONWEALTH *vs.* JULIO VENTURA & others.

Middlesex.   February 3, 1936. — March 30, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Practice, Criminal*, Empanelling of jury, Waiver, Appeal with assignments of error, Exceptions. *Jury and Jurors. Constitutional Law*, Trial by jury, Due process of law. *Pleading, Criminal*, Indictment, Plea. *Homicide.*

No constitutional right of the defendant in a capital case was infringed by a procedure whereby, at the empanelling of the jury, the court

ordered that jurors, as each was accepted and sworn, should retire to a jury room, where they remained in custody of an officer until the completion of the panel, when the complete panel was polled in open court.

An objection by the defendant in a capital case to an order of the court for the retirement to another room of each juror as accepted and sworn was waived if not made until after the completion of the panel.

Objection to the procedure before a grand jury must be made before a general plea to the indictment.

An indictment was valid though found by the grand jury upon the testimony of a single witness, an investigator, who had no personal knowledge of the facts constituting the crime.

A verdict finding four defendants guilty of murder in the second degree was warranted although there was no evidence of motive for the killing or of the identity of the killer, there being evidence that the defendants in an afternoon, together with the murdered man, went to a remote place where the victim afterwards was found mortally wounded by shooting and blows on the head; that after the killing the defendants gathered in another city late in the evening; that one of them was found in possession of an implement like one that might have been used to inflict the blows on the head of the victim, and that they made contradictory statements to explain their conduct during the afternoon and evening.

On appeal with assignments of error in a capital case, matters excepted to but not assigned cannot be urged in this court as of right.

INDICTMENT, found and returned on October 9, 1934, charging Julio Ventura, Aniello Orlando, James Penta, Angelo Cadero, and Angelo DeVito with the murder of Luigi Girgo on October 3, 1934.

The defendants, with the exception of Cadero, as to whom the indictment stood continued, were tried in the Superior Court before *Brown,* J. There was a verdict of guilty of murder in the second degree as to each of the four. Each filed an appeal with assignments of error.

*W. R. Scharton,* for the defendants.

*E. J. Bushell,* Assistant District Attorney, for the Commonwealth.

RUGG, C.J. These four defendants were indicted jointly with one Angelo Cadero (as to whom the indictment stands continued) for the murder on October 3, 1934, of one Luigi Girgo. The indictment subsequently was amended without objection by adding after the name Luigi Girgo the words "otherwise called Luigi Galetta." G. L. (Ter. Ed.) c. 277, § 35A. *Commonwealth* v. *Gedzium,* 259 Mass. 453, 458,

459, 460. *Commonwealth* v. *Snow*, 269 Mass. 598, 604, 605, 606. *Commonwealth* v. *McKnight*, 283 Mass. 35. A verdict of guilty of murder in the second degree was returned against these four defendants. The case comes before us by appeal with a concise summary of record, transcript of evidence and assignments of error in accordance with G. L. (Ter. Ed.) c. 278, §§ 33A–33G.

The first assignment of error relates to the denial of motions for the declaring of a mistrial filed by the defendants. The circumstances touching this matter are these: The trial and the empanelling of the jury began in the presence of the defendants and all counsel on January 21, 1935. After the selection of the first juror, the presiding judge said: "Mr. Officer, as fast as these jurors are accepted, until the empanelling is completed they may retire to the jury room while the examination of the succeeding jurors is in progress." Thus the jurors were in a protected place and under the general supervision of the trial judge. Officers were sworn to take charge of the jury as selected. The empanelling proceeded for the remainder of that day. Just before the noon recess on January 22, 1935, the empanelling of the jury was completed, the jury were polled, the defendants responded to the calling of their names, the foreman of the jury was appointed by the court, and five officers were sworn to take charge of the jury. When the court came in after the noon recess, the motions for the declaring of a mistrial were presented. The ground alleged in each motion was that "the court erred in permitting each juror after being qualified and duly sworn to pass upon the issues in the above case, to be removed from the court room where the defendants, charged with a capital crime were to be tried, into some other room of the court house, until all the twelve jurors were so qualified; and that thereafter the court assembled said jury in the court room where defendants were to be tried, when for the first time they were polled in a body by order of the court. All of which procedure was prejudicial to the defendants, and in violation of their constitutional rights."

The trial judge in denying the motions stated (1) that

they were filed too late and that objection to the procedure should have been made on the first or successive retirements from the court room to the jury room, and (2) that the reason for adoption of the procedure was because of his experience in another murder trial in the examination of jurors in the presence of those already selected.

The procedure as to this point is not prescribed by statute. The general provisions as to the empanelling of jurors are in G. L. (Ter. Ed.) c. 234, §§ 25–32. By § 26 it is required that if "a jury is to be impanelled for the trial of a capital case, the clerk of the court," after causing the name of each juror summoned therein to be written on a separate ballot, folded in a specified way and placed in a special box, "shall then in open court draw the ballots in succession from said box, and the twelve persons whose names are upon the ballots first drawn and who are not excused or otherwise set aside, shall be sworn as the jury for the trial of the case." No rule of court governs the procedure here assailed. It has been the practice for many years in capital trials under § 28 to call and examine each juror as his name is drawn from the box. If he is found indifferent and not disqualified and is not challenged, he is then sworn. G. L. (Ter. Ed.) c. 278, §§ 4, 5. This course is pursued with respect to each juror until twelve jurors found to be qualified and not challenged are sworn. It was assumed at the argument that it has been the practice also that, after being sworn, each juror has been seated in the portion of the court room reserved for the jurors during the trial and the hearing of evidence. The precise place where the jurors as they are accepted and sworn one by one shall wait while the remaining jurors are being accepted and sworn in like manner is a detail of court procedure. Such waiting jurors have no active duty at the time. They are not participating in the trial. The business before the court is the drawing and qualification of the remaining jurors. That is the matter then going forward which is of interest to the defendants and their counsel. The place or presence of jurors already sworn is of no moment to them. So long as these jurors are under the general super-

vision of the judge and the protection of the court, no
public interest or private right is affected. There is no
inflexible rule governing the subject. The public welfare
and the protection of the defendants are conserved pro-
vided these jurors, while the court is in session, remain in
a place appropriate to their position. The matter rests in
sound judicial discretion. *Watson* v. *Walker*, 33 N. H. 131,
142–145. *Walker* v. *Kennison*, 34 N. H. 257, 260. *Com-
monwealth* v. *Dascalakis*, 246 Mass. 12, 30–31. This is
illustrated by the practice which has prevailed respecting
the challenges of jurors. In *Commonwealth* v. *Knapp*,
9 Pick. 496, 499, tried in 1830, a juror after making answers
to preliminary questions was challenged by the prisoner.
Upon objection that challenge in such circumstances was
too late, the court ruled that a peremptory challenge might
be made at that time. In *Commonwealth* v. *Rogers*, 7 Met.
500, tried in 1844, the court decided that, notwithstanding
the *Knapp* case, the right of peremptory challenge, if
exercised at all, must be exercised in the first instance
before the juror should be interrogated as to his bias or
opinions. In *Commonwealth* v. *Webster*, 5 Cush. 295, 297,
tried in 1850, the court decided, in ruling upon a motion
presented by counsel for the defendant, that as part of the
usual course pursued, if the prisoner intended to challenge
peremptorily, he must exercise that right before the jurors
were interrogated as to their bias or opinions. So far as
we are aware this practice continued until the enactment
of St. 1873, c. 317, § 1, now embodied in G. L. (Ter. Ed.)
c. 234, § 29, to the effect that the right to challenge peremp-
torily any person called as a juror may be exercised after
it has been determined that such person stands indifferent.
It was said by the court speaking through Chief Justice
Knowlton in *Commonwealth* v. *White*, 208 Mass. 202, at
page 207: "In cases where the parties think the right very
important, and usually in trials for murder, a direction is
given by the court, defining the order and manner of mak-
ing the challenges. In the absence of such a direction, or
of conduct plainly indicating a waiver, the right of both
parties continues until the jurors are sworn." Thus the

practice has fluctuated touching a more important matter than the place for waiting jurors to sit. Respecting a closely allied procedural point, it was said in *Commonwealth* v. *Phelps*, 209 Mass. 396, 415: "We know of no case in this Commonwealth or elsewhere in which it is held that the defendant in a capital case has a right to have the jurors who have been sworn and impanelled kept together during a recess taken by the court before the impanelling of the jury is completed. For cases to the contrary see *Tooel* v. *Commonwealth*, 11 Leigh, (Va.) 714; *Epes' Case*, 5 Gratt. 676; *State* v. *Burns*, 33 Mo. 483." See also 1 Burr's Trial, 382.

The personal presence of the defendants at the trial was essential. *Commonwealth* v. *McCarthy*, 163 Mass. 458; *Lewis* v. *United States*, 146 U. S. 370. G. L. (Ter. Ed.) c. 278, § 6. There was no infringement of that right in the case at bar. The defendants were present at all times. Every require- ment of the statute was scrupulously observed in the draw- ing and impanelling of the jurors.

The defendants offer no argument or suggestion that in fact any harm came by the direction of the trial judge. No interest of the defendants has been endangered. Their right to a fair and impartial trial has not been affected in any degree. The precise place where jurors awaiting the com- pletion of the panel and, having no instant duty, shall sit is no essential part of trial by jury. The change of court pro- cedure here assailed has not impaired in any particular the right of the defendants to trial by jury as guaranteed by the Constitution and laws of this Commonwealth. *Commonwealth* v. *Gallo*, 275 Mass. 320, 326. *Commonwealth* v. *Demboski*, 283 Mass. 315, 320.

The defendants argue that their rights under the due process clause of the Fourteenth Amendment to the Con- stitution of the United States have been violated. That Amendment assures the defendant in a prosecution for a felony of the privilege "to be present in his own person whenever his presence has a relation, reasonably substan- tial, to the fulness of his opportunity to defend against the charge"; but it does not require the presence of the defend-

ant "when presence would be useless, or the benefit but a
shadow." There was no violation of the defendants' "priv-
ilege of confrontation, which is limited to the stages of the
trial when there are witnesses to be questioned." *Snyder*
v. *Massachusetts*, 291 U. S. 97, 105–107. The defendants
cite *Clinton* v. *Englebrecht*, 13 Wall. 434, *Hurtado* v. *Cali-
fornia*, 110 U. S. 516, 534, and *Patton* v. *United States*,
281 U. S. 276, 289. The principles declared in those decisions
are accepted to their full extent. It is unnecessary to review
them. In our opinion none of them supports the contention
of the defendants. The facts already narrated show their
inapplicability.

There is no merit in this assignment of error on an inde-
pendent ground. The point was not seasonably raised by
the defendants. The direction of the trial judge that the
jurors as accepted and sworn should go to the jury room
was made when the first juror was accepted and sworn. No
objection to the procedure was then offered by the defend-
ants. They delayed until the entire panel was completed
and polled and the foreman appointed, and until after a day
and a half of the time of the court and all persons connected
with the trial had been consumed, before suggesting that
there was irregularity. This was too late. The jurisdiction
of the court over the cause and the defendants was not
affected. If there was any merit in the suggestion, fairness
to the court required that objection be made at once. *Com-
monwealth* v. *Homer*, 235 Mass. 526, 536. *Commonwealth* v.
*Richmond*, 207 Mass. 240, 250. "A right may be waived or
lost by a failure to assert it at the proper time." *Atlantic
Coast Line Railroad* v. *Burnette*, 239 U. S. 199, 200. *Com-
monwealth* v. *Hassan*, 235 Mass. 26, 30–31.

·The second assignment of error relates to the denial of
motions of the defendants to dismiss and to declare a mis-
trial because the indictment was improperly found, in that
the grand jury heard only one witness, an investigating
officer who did not have personal knowledge of the facts
constituting the crime. It was agreed also that most of the
other witnesses called by the Commonwealth at the trial
were present ready to testify before the grand jury but were

not called by the grand jury or by anyone. This question was not raised before the general pleas to the indictment, and was not raised by any of the defendants until the case was closed on both sides except as to the defendant DeVito. He was the only one of the defendants who testified and he called no other witnesses in his behalf. Although it is stated in this assignment of error that knowledge of these facts was disclosed to the defendants for the first time during the trial, yet, this being a capital case, the information was available to them upon the presentment of the indictment. *Commonwealth* v. *Edwards,* 4 Gray, 1. *Commonwealth* v. *Jordan,* 207 Mass. 259, 264. G. L. (Ter. Ed.) c. 277, § 9.

There are two reasons why these motions were rightly overruled. The general plea of not guilty in the circumstances was in the main a waiver of all defects touching the indictment. Its genuineness was admitted by such a plea. *Lebowitch, petitioner,* 235 Mass. 357, 362–363. *Commonwealth* v. *Wakelin,* 230 Mass. 567, 570. *Commonwealth* v. *Walsh,* 255 Mass. 317, 319. See *State* v. *Mitchem,* 188 N. C. 608; *Murdick* v. *United States,* 15 Fed. Rep. (2d) 965. The case at bar is distinguishable from *Commonwealth* v. *Harris,* 231 Mass. 584, where issue was joined on a plea seasonably filed.

There is in this Commonwealth no statute defining the duties of grand jurors except as those duties may be gathered from the oath prescribed by G. L. (Ter. Ed.) c. 277, in § 5, and as to some other matters in §§ 6–14 not germane to the present issues. In *Commonwealth* v. *Woodward,* 157 Mass. 516, it was said at page 517: "This is substantially the form of the oath which has long been administered in England; and there as here the grand jury is deemed to be an informing and accusing body, rather than a judicial tribunal"; and at page 518, with ample citation of supporting authorities: "It has also often been held or declared that the court will not inquire whether incompetent evidence was heard by the grand jury." To the same effect is *Commonwealth* v. *Walsh,* 255 Mass. 317, 319, where the point was decided. In *Commonwealth* v. *Knapp,* 9 Pick. 495, before indictment and after the charge was delivered to the grand jury, it was moved in behalf of the accused that instructions be given in

regard to the nature of evidence proper to be received by them. In denying the motion it was said: "It is to be presumed that only proper evidence will be laid before the jury. There is a difficulty in determining beforehand what may or may not be proper; and it would be inconvenient, to say the least, to instruct them on hypothetical cases. The law reposes confidence in the officers of the government, in relation to this subject. If any thing improper shall be given in evidence before the grand jury, the error may be corrected subsequently upon the trial before the petit jury." See *Commonwealth* v. *Clune*, 162 Mass. 206, 213. There was no error under the law of this Commonwealth in denying these motions. *Commonwealth* v. *Ryan*, 5 Mass. 90. *Tucker's Case*, 8 Mass. 286. *Commonwealth* v. *Brown*, 147 Mass. 585, 593. *Commonwealth* v. *Jordan*, 207 Mass. 259, 269. *Goodman* v. *United States*, 70 Fed. Rep. (2d) 741. *People* v. *Brown*, 207 Cal. 172. *Holt* v. *United States*, 218 U. S. 245, 247. *McGregor* v. *United States*, 134 Fed. Rep. 187, 193. *State* v. *Fasset*, 16 Conn. 457, 472. *State* v. *Dayton*, 3 Zabr. 49. *Coblentz* v. *State*, 164 Md. 558, 566, 570–571. *McKinney* v. *United States*, 199 Fed. Rep. 25, 27–28. *United States* v. *Violon*, 173 Fed. Rep. 501. Wigmore on Evidence (2d ed.) § 4 (5), § 2364 (a). See *Regina* v. *Bullard*, 12 Cox C. C. 353. *Justice Field's Charge*, 2 Sawyer, 667. It is not necessary to inquire whether extraordinary circumstances may require modification of the governing principles. The case at bar falls within the general rule. In view of the decisions already cited and our settled practice, there is no occasion to examine cases like *State* v. *Grady*, 84 Mo. 220, 223, *United States* v. *Silverthorne*, 265 Fed. Rep. 853, *Brady* v. *United States*, 24 Fed. Rep. (2d) 405, and *Murdick* v. *United States*, 15 Fed. Rep. (2d) 965.

The third assignment of error relates to exceptions by the defendants Orlando, Penta and Ventura to refusal by the trial judge to direct verdicts in their favor. The ground upon which this claim of error is based is that there was a failure of evidence from which a reasonable inference could be drawn that the crime of murder was committed by any one of the defendants, or that they or any of them were

present at the time the crime was committed, or that any of them conspired with each other or with others, or aided or abetted in the commission of the murder, or that any one of them was in possession of any dangerous instrument with which the crime could have been committed. The fourth assignment of error relates to exceptions by the defendant DeVito to the refusal to direct a verdict in his favor and comprises substantially the same grounds as those urged by the other defendants. Each defendant, including DeVito, shortly after October 3, 1934, in response to questions by a State detective, made a full statement as to his actions on that date. These statements were read to the jury. That of DeVito did not differ in essential particulars from his testimony when called as a witness.

A summary of the evidence is necessary in order to discuss these assignments of error.

The evidence was undisputed that shortly after half past three o'clock on the afternoon of October 3, 1934, the Luigi Girgo named in the indictment as the victim of the homicide was found moaning, groaning and unconscious on the side of Kelly's Hill in Wilmington by the chief of police of that town. He was about thirty feet from an unoccupied cottage or shack in the edge of woods, and his hat was about three feet from the steps. His watch and chain were found near by. No revolver or bullets were found. There were blood spots on the grass. He was taken to a hospital in a neighboring town, where he died about an hour later without having regained consciousness. He appeared to be about thirty years old and weighed about one hundred eighty pounds. He had lived in Boston a number of years and worked in a restaurant in the North End. Examination showed that a bullet had passed through his head and another into his back and was embedded in a vertebra, and that on the side of his head there was a wound three inches in length under which there were several fractures of the skull and hemorrhage into the brain. This wound was consistent with two blows from an instrument used on the fist and known as metallic knuckles. The important factors causing death

were the fracture of the skull with its consequent internal injury and the bullet wound in the head. The fact that he was murdered thus appears to have been established and was not disputed.

At about half past two o'clock on the afternoon of October 3, 1934, a passing automobile was observed by the police officer on duty in Wilmington Square. It was subsequently identified as an automobile registered in the name of the defendant Orlando. It was then driven to a garage near by, where the driver, identified as the defendant Ventura, asked for adjustment of its brakes. On being informed that the mechanic for that work was out, inquiry was made if he would be back in an hour, and, on receiving an affirmative answer, this defendant said he would leave it. Instead of leaving it by the side of the building as requested, he drove it to the back of the building where it would not be easily visible to those on the main line of travel. Four men then got out of the automobile and walked away. Shortly afterwards four men were seen walking up the road leading to Kelly's Hill by at least five residents on that road, one being only a hundred feet from the place where the murder was committed. Three of these four men were identified as Ventura, Orlando and Penta by one or more of these residents. About five or ten minutes later, two other men followed walking on the same road to Kelly's Hill; one of these was identified by several residents as Luigi Girgo, and the other as DeVito by one at least, and by others by description of his clothing and height. Soon after the six men reached Kelly's Hill, two pistol shots were heard from the direction where the murdered man was found. Presently three men were seen returning toward Wilmington Square from Kelly's Hill. They were identified as three of the four men who earlier had gone up that road together. About half past three Ventura returned alone to the garage for the automobile and, although nothing had been done to its brakes, drove it away, first in the direction of Boston, and about five minutes later he passed in the opposite direction toward Lowell. The defendant Penta and another man

were seen near the cottage or shack not far from three o'clock. Penta and a companion were later found in another part of Wilmington, and saying they wanted to go to Boston were carried to the Reading railroad station and left there. That same night, at about 12:55 A.M. of October 4, the four defendants and Cadero, the other man indicted with them, were found by several police officers at the home of Ventura in East Boston. They were grouped around a table in the kitchen. According to the statements of the several defendants, they all met early in the evening and were together at restaurants, and finally went in a group to the Ventura home, where they were drinking and playing cards. Orlando was taken then to the North End Garage in Boston, where his automobile commonly was stored. He stated to the officers that he put the automobile in the garage at half past two o'clock on the afternoon of October 3 and did not take it out again, and that no one else had the keys or authority to take it out. The records of the garage showed that on October 3 the automobile was taken out at 7:20 A.M. and was returned by Orlando at 6:20 P.M. In the trunk in the rear of the automobile, opened by a key furnished by Orlando, were found metallic knuckles. The defendant Ventura owned land on Kelly's Hill in Wilmington, and the cottage or shack was owned by his brother. All the defendants knew the man who was killed. DeVito denied that he knew him, but there was evidence to warrant a finding to the contrary. The statements made by the several defendants as to their movements on the afternoon of October 3, 1934, were in essential matters in conflict with facts which might have been found to be proved beyond a reasonable doubt. Penta alone among the defendants stated that he was in Wilmington on the afternoon of October 3, but denied that the other defendants were there or that he saw Girgo there. He was seen by one witness near the cottage or shack a few minutes from the time when the killing occurred. No witnesses were called by the defendants, who rested at the close of the evidence for the Commonwealth, except DeVito, who alone testified in his own behalf. No motive was shown for the killing. There

was no evidence to indicate the person who fired the pistol or the one who used the metallic knuckles, or other implement whereby mortal wounds were inflicted upon the man who was killed.

The evidence warranted a finding of concerted action on the part of all the defendants in going to the remote place when the murder was committed on the afternoon of October 3, 1934, and that they all were in a position to render assistance in the commission of the crime. There was evidence of separation after the murder and a gathering in Boston late in the evening. The contradictory statements made by the several defendants and the possession by one of them of an implement like one by which it might have been found by the jury that a mortal blow was inflicted upon the murdered man were highly significant. A verdict of guilty of murder in the second degree was warranted on the evidence. There was no error in denying the motions for directed verdicts in favor of the defendants. *Commonwealth* v. *Knapp*, 9 Pick. 496, 518. *Commonwealth* v. *Webster*, 5 Cush. 295, 319–320. *Mammoth Oil Co.* v. *United States*, 275 U. S. 13, 52. The charge to the jury was comprehensive and clear and in accordance with established principles. To it no exception was taken.

All the assignments of error and all questions argued have been discussed. Other exceptions not included in the assignment of errors cannot be treated as rightly before us. *Commonwealth* v. *McDonald*, 264 Mass. 324, 336. *Commonwealth* v. *Zelenski*, 287 Mass. 125, 128. No error is disclosed on the record.

*Judgment affirmed.*