COMMONWEALTH *vs.* HENRY N. SOULIA.

Hampden.   December 5, 1949. — December 30, 1949.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Practice, Criminal,* Examination of jurors.  *Jury and Jurors.   Evidence,* Competency, On redirect examination, Admitted without objection, Exhibits.  *Witness,* Redirect examination.

The defendant at a murder trial was not prejudiced when the judge, in excusing a prospective juror who had stated that he did not believe in capital punishment or that a murderer should be punished, remarked to him, "You ought to be taken off the list of voters if you are on it."

After a witness for the Commonwealth at a murder trial had identified a piece of bullet jacket as having been removed from the body of the victim and had testified on cross-examination that he had not marked the piece although it was possible to mark it and he knew how to do so, there was no error in the admission of testimony by the witness on re-direct examination that he had not marked it because the ballistics department of the State police had requested that it be not marked.

After a question to a witness has been asked and answered without objection, the trial judge cannot be required to strike out the answer.

The defendant at a murder trial was not prejudiced by the denial of a motion "to strike from the record . . . [certain] exhibits marked for identification only" and of a motion that the jury be instructed "to disregard all evidence already in, of the witnesses, made in connection with" such exhibits, where it appeared that such exhibits never were admitted in evidence and that the judge at the defendant's request ruled that they would not go to the jury room and were not to be treated as evidence.

INDICTMENT for murder, found and returned on January 7, 1949.

The case was tried in the Superior Court before *Fairhurst,* J.  Following a verdict of guilty and sentence, the defendant filed an appeal and an assignment of errors.

With respect to the second assignment, the following appeared in the transcript of evidence:  A member of the State police, a witness for the Commonwealth, identified a piece of bullet jacket as having been removed from the body

of the murdered man and turned over to the ballistics laboratory by the witness. On cross-examination he testified that he had not marked the piece of bullet jacket although it was possible to mark it and he knew how to do so. On redirect examination the following occurred: DISTRICT ATTORNEY: "Is there any particular reason why you hesitate to put a mark on a bullet . . . before you turn it over to the ballistics department? A. Yes, the ballistics department requests that marks not be put on them for reasons which . . . COUNSEL FOR THE DEFENDANT: I object, if Your Honor please. DISTRICT ATTORNEY: He has been asked the question, Your Honor. THE JUDGE: No, I don't presume he ought to give any reasons that come from the ballistics. Let it be sufficient that the ballistics department asked, without any details, that they be not marked. COUNSEL FOR THE DEFENDANT: I ask that go out, Your Honor. THE JUDGE: I think that was in before your objection came. COUNSEL FOR THE DEFENDANT: I ask, Your Honor, that it be stricken and that Your Honor instruct the jury to disregard it. THE JUDGE: No, I won't disregard it. COUNSEL FOR THE DEFENDANT: Save my exception, Your Honor."

A. T. Garvey, (M. G. Kane with him,) for the defendant.

S. A. Moynahan, District Attorney, for the Commonwealth.

LUMMUS, J. The defendant was convicted and sentenced to death for the murder by shooting on November 22, 1948, at Chicopee of Francis W. Hudson. The evidence warranted the finding of the following facts. The defendant and Hudson were not acquainted with each other, but the defendant had met Hudson's wife where she was at work, and for a considerable time had maintained adulterous relations with her. He had asked her to elope with him, but she had refused to do so. On the day of the shooting, the defendant drove his automobile to Vermont, ostensibly to go deer hunting with his brother. But he returned in the evening to the neighborhood of Hudson's house, and brought with him from Vermont a thirty calibre Winchester hunting rifle.

Early in the evening of November 22, 1948, Hudson was killed by a single bullet from a rifle. The defendant was in the neighborhood at the time. Although at first he denied having a rifle, after it was found he admitted that it was his, and that he had thrown it away in the woods. One cartridge of two in the rifle had been discharged, and that fact he explained by saying that he had shot a fox on the way from Vermont. Expert testimony indicated that a piece of the cartridge found in the body of Hudson had been fired from the defendant's rifle. Similar cartridges were found in the defendant's automobile. Footprints found near where Hudson was shot fitted the overshoes of the defendant. He said that he had gone to the rear of the Hudson house to see whether Mrs. Hudson was "cheating on" him.

The first error assigned is to a remark of the judge during the selection of the jury. After eight jurors had been chosen, and were sitting in the jury box, one Eger was called as a juror. He testified that he did not believe in capital punishment. He said he did not believe in murder, but he did not believe that a murderer should be punished. The judge, in excusing him from service, said "You ought to be taken off the list of voters if you are on it." To that statement the defendant excepted.

Nothing in what the judge said could convey the idea to the eight jurors sitting in the jury box that he desired a conviction. His criticism of Eger was merely that Eger was unwilling to do his duty as a juror. It does not appear that the jurors not yet called heard what was said. At any rate, we see nothing prejudicial to the defendant even if they heard all. The charge was full and fair, and required the jury to find guilt beyond a reasonable doubt before the defendant could be convicted.

The second assignment is as follows. An expert who was a member of the State police testified that a piece of copper jacket was from the bullet found in Hudson's body. He testified that he had not marked it because the ballistics department of the State police asked him not to do so. The defendant then asked the judge to strike out the answer, and

excepted to his refusal to do so.  We see no error in this. It was for the jury to say whether the identification of the copper jacket as a part of the fatal bullet was satisfactory. Moreover, after the question had been answered it was too late to object to it and to have the answer expunged.  *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, 98, 99.  *Crowley* v. *Swanson,* 283 Mass. 82, 85.

The ninth, tenth, eleventh, twelfth, thirteenth and six-teenth assignments raise the point that an undischarged cartridge found in the defendant's rifle, and parts of a bullet taken from the body of Hudson, were not sufficiently identified as such.  It is enough to say that the jury could have found them to be sufficiently identified.

The eighteenth and nineteenth assignments relate to envelopes in which were placed the cartridge and the parts of a bullet already referred to.  These envelopes were marked for identification, but were never admitted in evidence.  The judge at the suggestion of the defendant said that they would not go to the jury room, and that they were not to be treated as evidence.[1]  We do not see how the action of the judge prejudiced the defendant.

Other assignments were not argued, and thereby were waived.  *Commonwealth* v. *Gale,* 317 Mass. 274, 276.  We have considered the whole case, as required by G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, and see no reason for ordering a new trial.  *Commonwealth* v. *Gricus,* 317 Mass. 403.  The verdict of guilty of murder in the first degree was amply supported by the evidence.

*Judgment affirmed.*

---

[1] The judge, subject to the defendant's exceptions, denied a motion by him "to strike from the record the exhibits marked for identification only" and a motion by him that the jury be instructed "to disregard all evidence already in, of the witnesses, made in connection with those exhibits that were marked for identification only . . . ." — REPORTER.