COMMONWEALTH *vs.* JAMES BARBER. November 5, 1982. Barber has appealed from his conviction (by a jury of six in a District Court) on three complaints. These involved alleged drug-connected offenses by Barber while serving a sentence at M.C.I. Norfolk. We affirm.

1. The trial judge denied Barber's motion to dismiss the venire on the ground that young adults were inadequately represented. The only evidence (admitted by stipulation) was a report, made in another case by a special master, which revealed that persons from age eighteen to thirty-four appeared on juries in the county substantially less frequently than would be expected in view of the number within that age group. There was no proof of intentional discrimination. The judge correctly ruled that the jury venire was not "illegally constituted." See *Commonwealth* v. *Bastarache*, 382 Mass. 86, 95-101 (1980), which (at 97-100) did not accept the view of *United States* v. *Butera*, 420 F.2d 564, 569-570 (1st Cir. 1970), that "young adults constitute a cognizable" or distinctive group.

2. The trial judge, on the date set for trial, denied a motion for information in the possession of the district attorney compiled by his staff for their own use about the conviction record of juries on which venire members had sat and material in the possession of the probation department. See e.g. G. L. c. 234, §§ 4 & 24B. The motion was not supported by an affidavit. See Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979). The only reason advanced by Barber at trial as to why he needed the probation department's material was that it would disclose each juror's age to assist counsel in exercising challenges. Observation of each juror would tend, of course, to disclose the juror's approximate age. Contentions not made to the trial judge, need not be considered on this appeal. *Commonwealth* v. *Tabor,* 376 Mass. 811, 823 n.18 (1978). It also was not shown that the probation office material had been furnished to the prosecution or would not have been supplied to defense counsel if it had been requested seasonably. The prosecutor's staff's "work product" could be protected. See Mass.R.Crim.P. 14(a)(5), 378 Mass. 876 (1979). No harm to Barber was shown from the denial of his belated request for the probation department material. The trial judge, on the record before him, did not abuse his discretion. See, however, the intimations in *Commonwealth* v. *Smith,* 350 Mass. 600, 603 (1966), and *Commonwealth* v. *Allen,* 379 Mass. 564, 577-580 (1980), about the desirability of equal access by parties to information about possible jurors.

3. The judge did not abuse his discretion by denying Barber's motion for individual examination of prospective jurors on proposed questions. These included questions concerning whether the jurors would be unduly prejudiced against a black defendant in prison charged with drug offenses, where the witnesses would be white correction officers. Barber did not prove any risk that a jury might make decisions based upon extraneous considerations sufficient to require (pursuant to G. L. c. 234, § 28) asking the proposed questions. See *Commonwealth* v. *Campbell,* 378 Mass. 680, 695-696 (1979); *Commonwealth* v. *Shelley,* 381 Mass. 340, 351-353 (1980); *Commonwealth* v. *Robinson,* 7 Mass. App. Ct. 600, 605 (1979); *Commonwealth* v. *Pelier, ante* 1000 (1982).

4. On the basis of *Commonwealth* v. *Palmarin,* 378 Mass. 474, 476-478 (1979), Barber contends that the prosecutor violated G. L. c. 278, § 23, by his cross-examination of Luke Janusz. Janusz, confined in the same prisons with Barber (and able there to communicate with him) had been called by Barber in an effort to show that Janusz owned heroin with the possession of which Barber was charged. Janusz was asked whether he had ever testified concerning the charges against Barber or had come forward to testify when Barber had been given at Wrentham a bench trial on the merits (not a preliminary hearing) from which (after conviction) Barber had appealed to obtain trial before a six-person jury. The witness replied in the negative. The prosecutor in argument also referred to Janusz's statement to a defense investigator about the ownership

and possession of the heroin and to the fact that Janusz had not come forward to exonerate Barber until long after Barber's alleged offense.

After the date of the alleged offense considered in the *Palmarin* case, G. L. c. 278, § 23, was amended by St. 1978, c. 478, § 305 (effective, see § 343, on January 1, 1979, well before July 5, 1980, the date of the alleged offense in this case). Section 23 (with additions made by the 1978 amendment shown in italics and omissions made by that amendment shown in brackets) reads: "At the trial of a criminal case in the superior court, upon indictment [or appeal], *or in a jury-of-six session in a district court*, the fact that the defendant did not testify at *any* [the] preliminary hearing [or trial] in the *first* [lower] court, or that at such hearing [or trial] he waived examination or did not offer any evidence in his own defens[c]e, shall not be used as evidence against him, nor be referred to or commented upon by the prosecuting officer." The words "or trial" were twice omitted from § 23 by the 1978 statute. We do not consider, however, whether there is merit in the Commonwealth's contention that § 23 no longer forbids the prosecution to ask questions about or refer to the failure of a pivotal defense witness to testify at an earlier *trial*. Cases under § 23 dealing with offenses since the 1978 amendments, have not discussed the omission of "or trial," because those cases have dealt with testimony at preliminary (probable cause) hearings still covered by the amended § 23. See *Commonwealth* v. *Cefalo*, 381 Mass. 319, 337 (1980); *Commonwealth* v. *Stokes*, 10 Mass. App. Ct. 434, 437-438 (1980). In the *Cefalo* case (at 338), it was pointed out that the "thrust of the questioning" there was to suggest that those witnesses "had prior opportunity to tell their stories to Commonwealth representatives and did not do so." This was described as "a proper mode of impeaching these witnesses by showing recent contrivance or bias in favor of the defendant." The thrust of the questions in this case was similar despite the very brief references to the trial at Wrentham. We think that there was no significant suggestion that Barber had called no witnesses at the earlier trial. In the circumstances now under review and in the absence of a far more direct suggestion that Barber had presented no earlier defense, any conceivable error was harmless beyond a reasonable doubt.

5. Barber (after the Commonwealth had rested its direct case and one defense witness had testified) presented a motion in limine that the prosecutor be ordered to refrain from asking Barber on cross-examination questions about his alleged refusal on July 5, 1980, to give (at the request of a correction officer) a urine sample. No Miranda warnings had been given prior to the request. The trial judge, after hearing argument, declined to rule on the motion until he heard the defense's direct evidence. No offer of proof was made of what Barber's testimony would be if he took the stand. See the suggestion in *Commonwealth* v. *Diaz*, 383 Mass. 73, 81-82 (1981). Despite the preference for early rulings on motions in limine (see the *Diaz* case, at 81, and *Commonwealth* v. *Blaney*, 12 Mass. App. Ct.

730, 737 [1981]; further review granted, 385 Mass. 1101 [1982]), the judge was not required to rule immediately on such a motion. Particularly was this so where the motion was made, as here, in the middle of trial and involved somewhat novel issues likely to be affected by direct defense testimony. These issues might include the scope of reasonable personal searches. See *Schmerber* v. *California*, 384 U.S. 757, 769-772 (1966, blood sample); *United States* v. *Dionisio*, 410 U.S. 1, 5-7, 13-15 (1973, voice exemplar); *United States* v. *Mara*, 410 U.S. 19, 22 (1973, handwriting sample); *Cupp* v. *Murphy*, 412 U.S. 291, 293-296 (1973, fingernail scrapings); *United States* v. *Smith*, 470 F.2d 377, 379-380 (D.C. Cir. 1972). See also *Commonwealth* v. *Tarver*, 369 Mass. 302, 309-310 (1975), and cases cited; *Commonwealth* v. *Angivoni*, 383 Mass. 30, 32-33 (1981). Compare *United States* v. *Kenaan*, 469 F.2d 181, 182-183 (1st Cir. 1974). Issues concerning the propriety of searches of prisoners might arise, see 3 LaFave, Search and Seizure § 10.9(b) (1978 and 1982 supp.); as well as problems concerning witness impeachment by evidence not admissible on a direct case. See *Walder* v. *United States*, 347 U.S. 62, 64-65 (1954); *Harris* v. *New York*, 401 U.S. 222, 224-226 (1971). See also *Commonwealth* v. *Harris*, 364 Mass. 236, 238-241 (1973). *Brooks* v. *Tennessee*, 406 U.S. 605, 609-613 (1972), relied on by Barber, is distinguishable. In that case, a Tennessee statutory requirement (that a criminal defendant, in order to testify, must be the first defense witness on penalty of being excluded from the stand later in the trial) was struck down, as impairing his constitutional right to remain silent.

6. The judge charged that if Janusz and another inmate threw a hypodermic needle among Barber's belongings "and he didn't know they threw it there," he must be found not guilty. He also charged that if Barber secreted a substance or item "in some place where he [Barber] had the ability to get it even though he didn't physically have it on his person that's sufficient to amount to possession." These and other questioned statements in the instructions cannot be considered in isolation. The instructions as a whole adequately stated the elements of the offenses charged and made clear that, in order to convict, the jury must be satisfied that Barber had the forbidden item in his possession and that he knew it. See *Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 (1968); *Commonwealth* v. *Roberts*, 378 Mass. 116, 130 (1979); *Commonwealth* v. *Lee*, 2 Mass. App. Ct. 700, 704-705 (1974).

The judge also reasonably stated that there was "sufficient evidence in this case" to require an instruction on "what is a joint enterprise." This statement involved no violation of "his province" or "charge upon the facts." See Holmes, J., in *Commonwealth* v. *Mulrey*, 170 Mass. 103, 110 (1898). The circumstances in which Barber and other participants were discovered by correction officers permitted an inference of joint possession and action. See *Commonwealth* v. *Dinnall*, 366 Mass. 165, 168-169 (1974).

7. The judge did not disregard appropriate considerations (see *Commonwealth* v. *O'Rourke*, 311 Mass. 213, 222-223 [1942]) in refusing to instruct that the jury might draw an inference from the failure of the Commonwealth to call as witnesses correction officers who had conducted a second skin search of the inmate Janusz. See *Commonwealth* v. *Morrissey*, 351 Mass. 505, 514-515 (1967); *Commonwealth* v. *Franklin*, 366 Mass. 284, 292-295 (1974). See also the analysis in *Commonwealth* v. *Niziolek*, 380 Mass. 513, 517-522 (1980), and *Commonwealth* v. *Melendez*, 12 Mass. App. Ct. 980, 981-982 (1981). There was no showing that the two witnesses were not available to Barber upon subpoena or that their testimony would be detrimental to the Commonwealth.

*Judgments affirmed.*

*Robert L. Sheketoff* for the defendant.

*Carmen W. Picknally, Jr.,* Assistant District Attorney, for the Commonwealth.