COMMONWEALTH *vs.* DANIEL O. SHERICK.

Plymouth. October 20, 1986. — January 5, 1987.

Present: ARMSTRONG, KAPLAN, & DREBEN, JJ.

*Rape. Practice, Criminal,* Comment by prosecutor. *Constitutional Law,* Self-incrimination. *Evidence,* Failure to produce evidence, Consciousness of guilt.

Comments by the prosecutor in his closing argument at the trial of a rape case that the defendant had told his story twice, at the police station and at trial, and that his stories were contradictory, while the victim's several accounts of the incident had been consistent, did not, in the circumstances, amount to improper comment on the failure of the defendant to come forward and speak after being taken into custody. [341-346]

Examples of comments by the prosecutor or judge in a criminal case of the type which amount to an improper allusion to the defendant's failure to testify, inviting an inference of guilt, compared with examples of those comments which, when taken in context, merely reflect an effort to summarize the evidence. [343-346]

At the trial of a rape case, there was no impropriety in the prosecutor's asking the jury, in sharp language during his closing argument, to consider whether the defendant had not intentionally accommodated or adjusted his testimony to the evidence presented by the Commonwealth. [347]

At the trial of a rape case at which there was evidence from which the jury could have found that the defendant had fabricated an account of events he gave to police before trial, the judge did not err in giving an instruction on consciousness of guilt over the defendant's objection. [347]

INDICTMENT found and returned in the Superior Court Department on June 25, 1984.

The case was tried before *George N. Hurd, Jr., J.*

*William R. Hill, Jr.,* Committee for Public Counsel Services, for the defendant.

*Robert P. Snell,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. Upon indictments charging him with aggravated rape, kidnapping, and assault by means of a dangerous weapon,

committed upon the person of a young woman (whom we shall call "the victim") on May 3, 1984, the defendant, Daniel O. Sherick, was tried in Superior Court in Plymouth County and found guilty of rape (as a lesser included crime), and acquitted on the other charges.[1] The present appeal attacks some remarks by the prosecutor in his closing argument, and a portion of the judge's instructions. It will suffice to outline the case without plunging into details. Then we deal with the particular contentions.

In the afternoon of May 3, the victim and her father and a younger sister were walking on Main Street, Brockton, the former two carrying bags of groceries. The defendant came by in a beat-up station wagon and offered them a ride. The victim and the father knew the defendant as a worker for a moving company who had recently assisted in moving their family to Main Street from Parker Street. The trio piled into the car and the defendant, with stops at the Registry of Motor Vehicles and a liquor store, drove them home, accepting along the way an invitation to take dinner with them.

The defendant ate little but drank a considerable amount of beer. Shortly after dinner the victim called her friend, Mary Dexter (we use a fictitious name), who lived on Court Street, and volunteered to babysit for her. The defendant offered to give the victim a ride there: it was a cold, rainy evening. Arriving outside Dexter's house, the defendant, instead of letting the victim out, locked the door on the passenger side, grabbed the victim's forearm to stop her from opening the door, and told her they were going for a ride. He said she would be in trouble if she told the police or the lawyers. Then he reached into the glove compartment, drew out a knife, and held it to her throat. Again he warned her about telling. (It may be noted here that the victim was eighteen years old, thin, frail, and of low intelligence.)

After a further struggle with the victim, the defendant drove to a junk yard on Freight Street, deserted at that hour, and turned off engine and lights. He removed his clothes, talking

---

[1] He was sentenced to four to eight years' imprisonment at M.C.I., Cedar Junction.

now (and later) about the victim having "his kid." Again the victim tried to get out of the car but the defendant prevented her. He undressed her, pushed her onto the back seat, and followed her there. He entered her mouth, then her vagina, then her anus. They put on their clothes and resumed places on the front seat. After some driving around, the defendant returned to the Dexter house and let the victim out of the car.

Mary Dexter, opening the front door in response to the doorbell, observed that the victim was wet and dishevelled. Asked where she had been — she was long overdue — the victim, evidently distraught, said she had been at McDonald's. When Dexter, disbelieving that story, said she would call the victim's father — he had been phoning Dexter repeatedly to see whether she had shown up — the victim told Dexter of the rape, identifying the man as the one who had moved the family from Parker Street.

Dexter called the Brockton police department and the Rape Crisis Center. Officer Eric Smith arrived with Officer Lee Kendrick, spoke with the victim, and brought her to the Brockton Hospital. There she told her story again. Her clothes were taken and Dr. Henry Kurusz, assisted by Nurse Maria J. LaCara, made various tests of which that for acid phosphatase (an enzyme found in seminal fluid) proved positive in readings from the mouth, questionably positive for the anus, and positive for the vagina (but this reading could be false because of the presence in the vaginal vault of blood remaining from the victim's recent menstrual period).

When the defendant was brought to the police station after his identification and arrest, he said, following Miranda warnings, that he was willing to talk. In conversation with Captain John Bukunt, with Officers Smith and Kendrick also present, the defendant denied knowing any family called "Robert" (fictitious name) though he knew a man for whom he had done some moving whose first name he took to be Robert. He told how he had spent May 3. In this narrative he accounted for the whole day and did not mention any encounter with the victim or her father. At the trial he took the stand and testified that he had picked up the victim and her father in the station

wagon on the afternoon of May 3, had drunk beer at the Robert place that evening, and had driven with the victim to the Dexter address. While in the car he had asked her whether she wanted to do some "parking," and she agreed. He had engaged in vaginal and oral intercourse with the victim at the junkyard, but she was a consenting partner. Following vaginal entry, it was the victim who initiated oral intercourse. He had returned her to the Dexter house.

Despite some wavering in the victim's testimony (mentioned below at note 2), the jury could well have believed the substance of the evidence which amounted to proof of forcible intercourse, and disbelieved the defendant's assertions of consent on the part of the victim, as well as the defendant's attempt at an alibi as told to Captain Bukunt. (The judge correctly denied the defendant's motion at the close of the Commonwealth's case for required findings of not guilty; the motion was not renewed at the close of all the evidence.)

1. In his closing argument to the jury, the prosecutor commented on the strength of the Commonwealth's evidence in comparison with the defendant's and asked the jury to consider where the balance of credibility lay. He said the victim's several accounts of the May 3 incident, including her testimony at the probable cause hearing, before the grand jury, and at trial, had been consistent.[2] On the other hand, the defendant had told his story twice, at the police station and at trial, and the stories were contradictory.[3]

---

[2] The jury could note that there was some partisan hyperbole in the prosecutor's statement about the victim's consistency. While it might be fairly stated that the victim's accounts were in general consistent (barring her early reference to McDonald's), cross-examination by the defense turned up a number of discrepancies in particulars between the victim's direct testimony at trial and her testimony at the probable cause hearing. The differences related to the time of various occurrences, descriptions of the knife and interior of the car, etc. As to some of these matters, the victim complained that she had been confused or misled by hostile questioning by counsel at the probable cause hearing.

[3] The prosecutor said:

"What else can you ladies and gentlemen consider in deciding who is telling the truth up there and who is not telling the truth? Well, one factor is the consistency of this version of what happened on that particular occa-

The prosecutor's comment passed without objection or re-mark by defense counsel. On the present appeal, however, the defense contends there was a breach of the rule that forbids prosecutor (or judge) to lead the jury to draw an adverse infer-ence from an accused's failure to come forward and speak at any stage after being taken into custody. See *Commonwealth* v. *Teixera,* 396 Mass. 746, 752 (1986). Cf. *Commonwealth* v. *Haas,* 373 Mass. 545, 553-554 (1977); *Commonwealth* v. *Mahdi,* 388 Mass. 679, 694-698 (1983). The policy at work here is that of the privilege against self-incrimination embodied in the Fifth Amendment to the United States Constitution, and, locally, in art. 12 of our Declaration of Rights and two satellite statutes, one, G. L. c. 233, § 20, Third, in effect embodying or restating the privilege,[4] and a second, G. L. c. 278, § 23, applying it more particularly to references to the failure of a defendant to testify or offer evidence at a preliminary hearing.[5]

---

sion. Now, [the victim], as I told you, has told this story quite a few times. She told it to the police, she told it to the people at the hospital, she told it at the preliminary hearing, she told it at the grand jury, she told it here. She was cross-examined at the preliminary hearing, she was cross-examined here.

"....

"... That man has told his story twice. He told it to the police the night he was arrested, and told it to you ladies and gentlemen on the witness stand. Not five or six times, like [the victim]. Twice.

"Is what he told the police he was doing the night that he was arrested consistent with his trial testimony? Ladies and gentlemen, I suggest to you that that man got in that room with Captain Bukunt and Officer Smith and he told a false alibi. He lied to those police officers about what he did that week before . . . ."

[4] General Laws c. 233, § 20, Third, as appearing in St. 1983, c. 145, provides: "The defendant in the trial of an indictment, complaint or other criminal proceeding shall, at his own request, but not otherwise, be allowed to testify; but his neglect or refusal to testify shall not create any presumption against him."

[5] General Laws c. 278, § 23, as amended by St. 1978, c. 478, § 305, provides: "At the trial of a criminal case in the superior court, upon indict-ment, or in a jury-of-six session in a district court, the fact that the defendant did not testify at any preliminary hearing in the first court, or that at such hearing he waived examination or did not offer any evidence in his own

The privilege should never fail of high respect and solid enforcement in our courts, but the attempt to bring it or its policy to bear in the present case to reverse the conviction seems to us much overdrawn and without merit. Here the prosecutor's comment was not directed to any failure of the defendant to testify; that would have been improper. Rather the comment was directed to an appraisal of the evidence on both sides that had been given at the trial; that was permissible. We elaborate the distinction as far as necessary.

(a) Impermissible. A prosecutor may not at trial, in questioning witnesses or addressing the jury, point to the defendant's failure to take the stand, thereby inviting the inference that the defendant fears to face the music or has something to hide. See *Commonwealth* v. *Domanski,* 332 Mass. 66, 69 (1954); *Commonwealth* v. *Smith,* 387 Mass. 900, 908-909 (1983). Of course such a fault is as bad or worse where the judge himself makes such a direct, tendentious reference. See *Commonwealth* v. *Goulet,* 374 Mass. 404, 410-411 (1978). The same vice inheres in interrogation or comment at trial that is pointed toward bringing out that a defendant had nothing to say when he was arrested, see *Commonwealth* v. *Cobb,* 374 Mass. 514, 520-522 (1978), or avoided testifying or putting in any case at an earlier hearing, see *Commonwealth* v. *Haraldstad,* 16 Mass. App. Ct. 565, 574-575 (1983), in either instance inviting an inference headed toward a conclusion of guilt. The situation is not different where a prosecutor, in lieu of saying in terms that the defendant has failed to testify, remarks archly that the Commonwealth's case has not been answered or remains un-

defense, shall not be used as evidence against him, nor be referred to or commented upon by the prosecuting officer."

The original of this provision was St. 1912, c. 325, enacted to overcome the decision in *Commonwealth* v. *Goldstein,* 180 Mass. 374 (1902) (Holmes, C.J.), which held that it was lawful for a prosecutor to state directly to the jury, as tending to prove the defendant's guilt, that the defendant had offered no evidence at the preliminary hearing. The opinion did not mention any constitutional provision. See *Myers* v. *Commonwealth,* 363 Mass. 843, 852 n.9 (1973). As the constitutional guarantees have been extended by interpretation to protect a defendant's "silence" in the early stages of the criminal process, G. L. c. 278, § 23, has in effect been largely if not altogether overtaken by those guarantees.

contradicted, when it is apparent that a response must have come, if at all, from the defendant. See *Commonwealth* v. *Balthazar,* 366 Mass. 298, 303-304 (1974); *Commonwealth* v. *Gouveia,* 371 Mass. 566, 570-572 (1976); *Commonwealth* v. *Hawley,* 380 Mass. 70, 82-84 (1980). So, too, instead of saying outright that the defendant was speechless and tendered no evidence at a hearing on probable cause, a prosecutor may produce the same effect by the maneuver of beginning his cross-examination of witness after witness offered for the defense at trial by asking whether the witness was called by the defense to testify at the probable cause hearing, and eliciting in each instance a negative answer. See *Commonwealth* v. *Morrison,* 1 Mass. App. Ct. 632 (1973), and remarks in *Commonwealth* v. *Maguire,* 375 Mass. 768, 774-775 (1978); *Commonwealth* v. *Palmarin,* 378 Mass. 474, 476-478 (1979). Cf. *Commonwealth* v. *Sneed,* 376 Mass. 867, 869 (1978).

(b) *Permissible.* In the cases described above, the privilege is subverted by what is, or amounts to, a direct appeal to the jury to draw the forbidden inference from the defendant's silence. But it is not in every case where the fact of the silence is in some way referred to that the privilege is abused. Indeed, in many situations it is not possible for a prosecutor absolutely to skirt the fact.[6] The question is whether the jury's attention is being directed to the defendant's silence or failure to produce evidence as the basis for the prohibited inference, or is rather directed to a different matter, with the silence, in the rather unlikely event it draws any attention, being sensed as collateral or incidental.[7]

---

[6] As the court observed in *United States* v. *Armedo-Sarmiento,* 545 F.2d 785, 793 (2d Cir. 1976), cert. denied, 430 U.S. 917 (1977), "No matter how delicately worded, a summation which points to the strength of the government's proof, points inevitably, albeit silently, to the weakness of the defendant's." Obliquely this touches on a defendant's failure to testify.

[7] The decisions have used varying language to describe when a comment crosses the line of the permissible; thus, comment is bad "which can be fairly understood as permitting the jury to draw an inference adverse to the defendant from the fact of his failure to testify," *Commonwealth* v. *Goulet,* 374 Mass. 404, 412 (1974); "unless a prosecutor's comments are of such a nature that a jury would naturally and necessarily construe them to be

We mention illustrative instances of permissible commentary. The prosecutor's comment, "Have you heard word one from the defendant as to what took place down at the police station," could "in the context of the entire argument" be characterized as "directed more at the general weakness of [the defendant's] defense than toward the defendant's own failure to testify." *Commonwealth* v. *Storey,* 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980). Remarks in a closing argument when "[t]aken in context," "reflect[ed] an effort to summarize the evidence rather than any attempt to comment on the failure of the defendant to testify." *Commonwealth* v. *Ferreira,* 381 Mass. 306, 315 (1980). In *Commonwealth* v. *Seay,* 376 Mass. 735 (1978), with entrapment in issue, the prosecutor said there was no evidence of the defendant's frame of mind (i.e., whether he was "predisposed"). This implicit reference to the defendant's failure to take the stand, coming "[i]n the context of an argument on the weakness of the defendant's entrapment defense" lacked the "forbidden tendency" of suggesting to the jury that it might "treat the defendant's silence as substantive evidence of guilt." *Id.* at 744. Closing to a jury in a murder case where the defense was suggesting that the victim died by accident, the prosecutor asked why the defendant failed to seek medical attention, and so on. This did not impinge on the defendant's exercise of his privilege not to take the stand: it was a "commentary on the evidence" and permissible. *Commonwealth* v. *Lowe,* 15 Mass. App. Ct. 262, 267 (1983). A prosecutor's comment that the defendant, who did not testify, gave only a partial and inadequate explanation at the time of her arrest (for a motor vehicle offense) was directed toward the "general weakness" of the defendant's account, and was not a proscribed comment on the defendant's exercise of her right to remain silent at that time. *Commonwealth* v. *Porter,* 15 Mass. App. Ct. 331, 336 (1983). See also *Commonwealth*

directed to the failure of the defendant to testify, they are not prejudicially unfair," *Commonwealth* v. *Smallwood,* 379 Mass. 878, 892 (1980), quoting from *United States* v. *Armedo-Sarmiento,* 545 F.2d at 793. See also McCormick, Evidence § 131, at 320 (3d ed. 1984). The formulation in our text perhaps approximates the net practical effect of the decisions.

v. *Belton,* 352 Mass. 263, 270 (1967); *Commonwealth* v. *Smallwood,* 379 Mass. 878, 891-893 (1980); *Commonwealth* v. *Gonzalez,* 22 Mass. App. Ct. 274, 282 (1986). Cf. *Commonwealth* v. *Cefalo,* 381 Mass. 319, 337-338 (1980). Annot., 24 A.L.R. 3d 1093 (1969) (with 1986 Supp.), collects many cases that are helpful in delineating the legal line.

(c) *Present case.* Here, as we have noted, the prosecutor was directing the jury's attention to the strength of the evidence on either side. In the face of the defendant's full testimony at trial (together with evidence of what he told the police at the station), it seems improbable that the jury could have had any distinct reaction to the prosecutor's oblique reference (so far as it was a reference at all) to an episode of pretrial silence. Cf. *Commonwealth* v. *Belton,* 352 Mass. at 270. We add that the judge, early in the trial, had instructed the jury that the official preliminaries to the trial, including the probable cause and grand jury proceedings and indictment, were merely accusatory, not to count in their consideration of the case.[8]

Thus, we think there was no infraction of the defendant's rights. Defense counsel was evidently of like opinion, as he did not object. In the absence of objection, if an infraction were found, the question would be whether it created a substantial risk of a miscarriage of justice.[9] Having in mind the obscurity of the prosecutor's reference and the weight of the whole record, we think the answer is negative. See *Commonwealth* v. *Smallwood,* 379 Mass. at 892; *Commonwealth* v. *Barber,* 14 Mass. App. Ct. 1008 (1982). Cf. *Commonwealth* v. *Egerton,* 396 Mass. 499, 508 (1986).

---

[8] After describing the preliminary proceedings, the judge concluded as follows: "[A]s I told you at the outset, those proceedings have nothing to do with what we're dealing with here. They deal with the accusatory process and not whether the defendant in a particular case who has been indicted is innocent or guilty. That is your function and your function alone."

[9] See *Commonwealth* v. *Palmarin,* 378 Mass. at 477; *Commonwealth* v. *Stokes,* 10 Mass. App. Ct. 434, 437-438 (1980); *Commonwealth* v. *Mitchell,* 12 Mass. App. Ct. 354, 355-356 (1981). Cf. *Commonwealth* v. *Paradiso,* 368 Mass. 205, 210-214 (1975), ruling that violation of G. L. c. 278, § 23, could be harmless error; on this point the court cited *Chapman* v. *California,* 386 U.S. 18 (1969).

2. In sharp language, the prosecutor asked the jury to consider whether the defendant had not intentionally accommodated or adjusted his testimony to the evidence presented by the Commonwealth. Within reason, prosecutors may be critical of the character of evidence offered by the defense, see *Commonwealth* v. *Cheek,* 374 Mass. 613, 618 (1978) (defense "tailor-made to try and avoid the evidence as it came in from the Commonwealth"); *Commonwealth* v. *Campbell,* 378 Mass. 680, 703-704 (1979), just as they may comment on defense trial tactics. See *Commonwealth* v. *Dunker,* 363 Mass. 792, 800 (1973); *Commonwealth* v. *Borodine,* 371 Mass. 1, 11 (1976), cert. denied, 429 U.S. 1049 (1977), habeas corpus denied, *Borodine* v. *Douzanis,* 592 F.2d 1202 (1st Cir. 1979); *Commonwealth* v. *Gonzalez,* 22 Mass. App. Ct. at 282. The prosecutor's comment was a permissible reflection upon elements of the defendant's testimony. Thus, after the victim described the acts of intercourse as having occurred on the back seat of the station wagon, the defendant replied with testimony that the back seat was occupied by a number of tires. Cross-examination in some detail went far enough for a jury to surmise that this testimony was invented for the occasion. So, too, the prosecutor could suggest that the defendant's testimony about the acts of intercourse was accommodated to the results of the acid phosphatase tests.

3. There was objection to the judge's giving an instruction on consciousness of guilt (the content of that instruction was not in dispute). The objection was properly overruled because the jury could find that the defendant intentionally fabricated the account he gave Captain Bukunt at the police station. Such knowing falsity has many times been recognized as a sign of consciousness of guilt, justifying the conventional instruction on the subject. See *Sheehan* v. *Goriansky,* 317 Mass. 10, 16 (1944); *Commonwealth* v. *Eppich,* 342 Mass. 487, 492 (1961); *Commonwealth* v. *Meuse,* 3 Mass. App. Ct. 189, 190-191 (1975), *S.C.,* 10 Mass. App. Ct. 937 (1980).

*Judgment affirmed.*