*853 The defendant claims that the judge’s denial of his motion for a required finding of not guilty was error with respect to the charge of assault with intent to murder and the lesser included offense of assault with intent to kill, because the Commonwealth’s evidence was insufficient to establish that he shared the intent (1) to kill the victim; and (2) to use a dangerous weapon.
We turn first to the sufficiency of the evidence on the issue of the defendant’s intent. Considered in the light most favorable to the Commonwealth, the jury could have found the following facts beyond a reasonable doubt. Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). On or about September 19,1994, Morse and Flynn and the victim, David Delpivo, spent the day driving around in Morse’s Chevrolet Blazer drinking beer and smoking crack cocaine. Some time around 11:00 p.m., the trio arrived at Flynn’s father’s home near Woodstock, Vermont, loaded numerous household items into the Blazer, including two television sets, and began their return trip to Connecticut, intending to sell the items to repay a debt which Flynn owed Delpivo.
Approximately thirty minutes after leaving Vermont, the men began arguing. Morse and Flynn demanded that Delpivo turn over all his remaining cash to purchase more crack, but Delpivo refused and further demanded that Flynn repay his debt immediately. At some point, either Morse or Flynn threatened to kill Delpivo if he refused to surrender the money. Moments later, Morse, who was driving, pulled the Blazer off the road and Flynn dragged Delpivo onto the grassy median, where he began punching him. Delpivo was stabbed in the buttocks, sustaining a penetrating injury that pierced the rectum, and was, therefore, life threatening. Morse and Flynn subsequently fled the scene, abandoning Delpivo, who was severely beaten and bleeding profusely, on a desolate strip of Interstate 91 in Deer-field, Massachusetts.
When Delpivo was discovered by State Trooper Michael Richards at approximately 2:00 a.m., he told the officer that “Don [Flynn] and Bob [Morse] had stabbed and beaten him” and that the men were headed toward Connecticut in a black Blazer with Connecticut license plates. Morse and Flynn were apprehended approximately twenty minutes later heading south on Interstate 91. Morse’s pants, socks and shoes were covered with blood, and he was in possession of approximately fifty-one dollars in cash.
With respect to the defendant Morse, the Commonwealth relied on a joint venture theory of assault with intent to murder. The distinction between assault with intent to murder and the lesser included offense of assault with intent to kill is that “[a]ssault with intent to kill consists of assault, specific intent to kill, and the mitigating factor of heat of passion induced by sudden combat or reasonable provocation [and assault] with intent to murder consists of assault, specific intent to kill, and the absence of mitigation.” Commonwealth v. Nardone, 406 Mass. 123, 131 (1989). “The test [for joint venture] is whether [the] defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary.” Commonwealth v. Longo, 402 Mass. 482, 486 (1988), quoting from Commonwealth v. Bianco, 388 Mass. 358, 366 (1983).
*854 On appeal, the defendant does not dispute that he was present at the scene of the assault and in a position to render aid if necessary. Rather, he maintains that the evidence offered by the Commonwealth, together with reasonable inferences drawn therefrom, was insufficient to persuade a rational jury beyond a reasonable doubt that he intended that the victim be killed. We disagree.
Knowing that Delpivo’s life had just been threatened, Morse pulled the Blazer off the highway, enabling Flynn to drag Delpivo from the vehicle. Moreover, he participated in the assault as evidenced by the blood on his clothing and the victim’s statement to Officer Richards, and he subsequently fled the scene, abandoning the beaten and bleeding Delpivo along the highway in the middle of the night. The jury could reasonably have inferred specific intent to kill from these circumstances. See Commonwealth v. Soares, 377 Mass. 461, 470 (1979) (jury may infer the requisite mental state from the defendant’s knowledge of the circumstances and subsequent participation in the offense).
The defendant next argues that the evidence was insufficient to support a finding that he intended to use a dangerous weapon to assault Delpivo or that he knew Flynn so intended. Possession of a dangerous weapon is not an element of the crime of assault with intent to murder or of the lesser included offense of assault with intent to kill. Commonwealth v. Parenti, 14 Mass. App. Ct. 696, 704 (1982). Accordingly, conviction of either of these crimes under a joint venture theory does not require proof that the defendant knew the perpetrator was armed or that he intended to use a dangerous weapon.
The defendant correctly points out that count II of the indictment, charging him with assault with intent to murder in violation of G. L. c. 265, § 15, includes language alleging that the defendant “did assault David R. Delpivo ... by striking him with a dangerous weapon.” This variance between the language of the indictment and the essential elements of the crime charged, however, does not warrant reversal of his conviction. Commonwealth v. Hobbs, 385 Mass. 863, 870 (1982).
“[Wjhen the particular terms of [an] indictment from which the evidence or instructions depart [are] merely ‘surplusage’ — unnecessary to describe the crime — and [do] not mislead the defendant [or] confuse the jury,” the departure is harmless. Ibid. Here, the reference to a dangerous weapon did not prejudice the defendant. Count II of the indictment clearly informed the defendant that he was being charged with assault with intent to murder under G. L. c. 265, § 15.[2] He was therefore on notice that the Commonwealth had to prove only the essential elements of that crime in order to secure a conviction. Moreover, the judge’s charge instructed the jury on the essential elements of assault with intent to murder and the lesser included offense of assault with intent to kill, and defense counsel did not object to those instructions.
We are satisfied, as defense counsel appears to have been, that count II of the indictment properly charged the defendant with assault with intent *855 to murder. The reference to a dangerous weapon is mere surplusage and therefore does not warrant reversal of the conviction. See Commonwealth v. A Juvenile, 365 Mass. 421, 440 (1974) (defendant not entitled to acquittal by reason of the Commonwealth’s failure to prove unnecessary allegations in the description of a crime). See also G. L. c. 277, § 35,[3]

Marking the weapons for identification.

During the testimony of the officer who executed the search warrant for the defendant’s Blazer, the prosecutor requested that three knives and a sickle found inside the vehicle be marked for identification. The defendant objected. At side bar, the prosecutor indicated that he intended to put the weapons in evidence after the victim’s treating physician and a forensic chemist testified regarding the type of wound sustained by the victim and the presence of occult blood on one of the knives. The judge allowed the items to be marked for identification. Although all four implements were marked, only the knife containing traces of occult blood was eventually offered and admitted in evidence. The defendant argues that the jury’s ability to see the three weapons that were never put in evidence so prejudiced him that his conviction must be reversed.
“The fact that, at or about the time of a crime, a defendant had a weapon that could have been used in committing the crime is admissible in the judge’s discretion,” Commonwealth v. Toro, 395 Mass. 354, 356 (1985), even where there is no “direct proof that the particular instrument was in fact the one used.” Commonwealth v. Marquetty, 416 Mass. 445, 448 (1993), quoting from Commonwealth v. O’Toole, 326 Mass. 35, 39 (1950). Accordingly, we do not think the judge abused his discretion by allowing the weapons to be marked for identification pending the presentation of testimony providing a sufficient basis for their admission. The fact that the prosecutor apparently decided not to offer all items originally marked does not warrant reversal of the defendant’s conviction. See Commonwealth v. Soulia, 325 Mass. 155, 158 (1949) (no prejudice to defendant where envelope containing gun cartridges and parts of bullet were marked for identification but never admitted in evidence); Commonwealth v. Barnes, 40 Mass. App. Ct. 666, 671 (1996) (no reversal where ax handles that could have been used in attack were marked for identification and viewed by the jury, but never admitted in evidence).
When the items were initially marked, the judge indicated that they were being “marked for identification only.” Moreover, in his charge the judge clearly advised the jury that, in making their decision, they were limited to considering only the testimony and exhibits that were actually in evidence.[4]
Cindy Ellen Hill for the defendant.
Judith Ellen Pietros, Assistant District Attorney, for the Commonwealth.

Cross-examination regarding postarrest silence.

The defendant took the stand and testified that Delpivo forced him to pull the Blazer over and subsequently attacked him with a “shiny object.” He further maintained that Delpivo somehow fell as the two men struggled, inadvertently stabbing himself. Finally, he testified that his clothing became soaked with blood when he attempted to force Delpivo into the Blazer so that he could receive prompt medical attention.
On cross-examination, the prosecutor asked the defendant whether, given his purported concern for Delpivo’s welfare, he had informed the police of Delpivo’s location and condition after being stopped. Initially, the judge overruled defense counsel’s objection to this question and the defendant answered that he did not say anything because he “had no lawyer present.” When the prosecutor attempted to follow through with this line of questioning, however, the judge “sustain[ed] the objection [with respect] to what [the defendant] did or didn’t say.” The defendant now argues that the prosecutor’s reference to his postarrest silence was improper in that it violated his right to remain silent under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.
Any reference to a defendant’s silence when arrested, aimed at creating an inference of guilt, is impermissible. Commonwealth v. Sherick, 23 Mass. App. Ct. 338, 343 (1987), citing Commonwealth v. Cobb, hi A Mass. 514, 520-522 (1978). The prosecutor’s question was therefore improper, and the objection should have been sustained. Ibid. The judge reconsidered his initial ruling almost immediately, however, and clearly indicated that he was sustaining the objection with respect to “what [the defendant] did or didn’t say.” Contrast Commonwealth v. Nickerson, 386 Mass. 54, 61 (1982) (judge’s instructions to jury that they could use defendant’s pre-arrest silence in assessing the reliability of his testimony warranted reversal of conviction). Moreover, the defendant’s answer to the prosecutor’s initial question did not prejudice his case. “Although most lay people do not know the intricacies of their constitutional rights, it is a generally held notion that one does not have to say anything to the police and that what one does say may be used against him.” Ibid.

Judgment affirmed.

 Indeed, count I of the indictment, charging the defendant with assault by means of a dangerous weapon was the subject of a successful defense motion for a required finding of not guilty.

 General Laws c. 277, § 35, provides, in relevant part:
“A defendant shall not be acquitted on the ground of variance between the allegations and proof if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defence.”

 The judge stated:
“Now in determining what the facts are, you must rely solely upon your *856 recollection ... of the testimony and the evidence presented in the trial, together with the exhibits that you’re going to take into the jury room with you.
“[Ejvidence is the testimony [of] the witnesses [and] the exhibits . . . which were introduced. And I believe there have been some 24 exhibits introduced in this case, and you’ll have those in the jury room with you. . . . [Everything that went on during the trial was not necessarily evidence.”