COMMONWEALTH *vs.* SALVATORE RUSSO.

No. 95-P-1330.

Suffolk. December 14, 1999. - July 7, 2000.

Present: JACOBS, PORADA, & GREENBERG, JJ.

*Constitutional Law,* Self-incrimination, Assistance of counsel. *Practice, Criminal,* Comment by codefendant's counsel, Instructions to jury, Assistance of counsel. *Conflict of Interest.*

This court concluded that a criminal defendant's right to remain silent under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights is implicated in circumstances in which a codefendant's counsel's remarks at trial directly or implicitly comment on the defendant's failure to speak or testify. [581-582]

At a criminal trial, comments of a codefendant's counsel regarding the codefendant's conduct at the time police executed a search warrant, which did not contain any direct reference to the defendant but which could have been construed as oblique and implicit references to the defendant's silence, were not so prejudicial as to warrant the grant of a new trial, given the strength of the case against the defendant and the judge's curative instructions. [582-584]

A criminal defendant did not demonstrate that an attorney he had consulted, who later represented a codefendant at their joint trial, had any conflict of interest that resulted in material prejudice to the defendant. [584-586]

INDICTMENTS found and returned in the Superior Court Department on December 12, 1991.

The cases were tried before *Barbara J. Rouse,* J., and a motion for a new trial was heard by her.

*Marielise Kelly* for the defendant.

*Kenneth E. Steinfield,* Special Assistant Attorney General, for the Commonwealth.

JACOBS, J. The principal issue before us is whether certain comments in opening and closing statements of counsel for the codefendant, James Ciampi, call for a reversal of the defendant Russo's convictions. Russo argues the comments constitute improper reference to his failure to testify. We conclude they do

not. We also reject Russo's claim of error based on an alleged conflict of interest on the part of Ciampi's trial counsel.

After a joint trial, a Superior Court jury convicted Russo of two counts of trafficking in cocaine and acquitted Ciampi of a single charge of trafficking.[1] Represented by new counsel, Russo filed a motion for new trial which was denied by the trial judge. He now appeals from his convictions and the denial of his motion for a new trial.

*Background.* Pursuant to an investigation, police executed search warrants in Revere for Russo's apartment located in a building owned by his parents, and a nearby apartment that Russo and Ciampi had leased from a third party. The leased apartment allegedly was used as a "stash pad." Among the items seized in Russo's apartment were three bags of cocaine with a total weight of 16.97 grams, beepers, a scanner, and keys to the leased apartment. At the "stash pad" police found four bags of cocaine with a total weight of 683 grams, six empty "kilogram wrappers" containing cocaine residue, two scales, Inositol, and various plastic baggies.

In the course of his opening statement, made after the Commonwealth rested,[2] Ciampi's trial counsel said:

> "Finally, you will hear from my client. My client will take the stand, as he did that time with the police officer, and he spoke. He didn't hide. When the police officer said, 'you have a right to remain silent,' he spoke to him; and he's going to speak to you today."

In his closing argument, Ciampi's counsel argued that his client's connection with the leased apartment was insufficient to show he was engaged in drug trafficking and that, when questioned by police at the time of the search, he voluntarily offered information to explain his involvement with that apart-

---

[1] One count is for trafficking in cocaine with a weight of two hundred or more grams, G. L. c. 94C, § 32E(*b*)(4), and the second for trafficking in cocaine with a weight of fourteen or more grams, G. L. c. 94C, § 32E(*b*)(1). Russo received a sentence of from fifteen years to fifteen years and one day on the former charge, and a concurrent from three to five year sentence on the latter. Russo was found not guilty on charges of illegal possession of a firearm and of ammunition, G. L. c. 269, § 10(*h*); and of receiving stolen property, a handgun, G. L. c. 266, § 60. Ciampi also was acquitted on the same three charges.

[2] Russo's trial counsel did not make an opening statement.

ment.[3] Referring to Ciampi's conduct at the time the police executed the search warrant, his counsel said:

> "He didn't say he wasn't going to talk to [the police]. He didn't say he was going to take his Fifth Amendment rights. He talked."

Russo did not testify and there was no evidence as to his conduct at the time of the search other than police testimony that he was arrested and read his rights.

*Alleged improper comment of codefendant's counsel.* Russo argues that the statements in issue constituted impermissible comment on his failure to take the stand and therefore violated his constitutional right to remain silent under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.[4] There is ample authority protecting a defendant from improper statements by judges and prosecutors relating to a defendant's silence. "The law in this Commonwealth has long been that art. 12 prohibits any comment by the judge which can be fairly understood as permitting the jury to draw an inference adverse to the defendant from the fact of his failure to testify." *Commonwealth* v. *Goulet,* 374 Mass. 404, 412 (1978). See *Commonwealth* v. *Sherick,* 23 Mass. App. Ct. 338, 346 (1987). Our cases rely on the "generalization that 'the Fifth Amendment prohibits comment on the defendant's silence,' *Griffin* v. *California,* 380 U.S. 609, 614 n.5 (1965), [and that Federal law] has also been thorough in searching out and condemning references, even though indirect, to the circumstance that a defendant has availed himself of his constitutional privilege." *Commonwealth* v. *Goulet, supra.* See Smith, Criminal Practice and Procedure § 1859 (2d ed. 1983 & Supp. 2000).

No Massachusetts appellate decision has addressed whether the constitutional protection afforded in cases involving comments by judges or prosecutors extends to statements made by

---

[3]A State trooper testified that, when Ciampi was detained at the time of the search and advised of his right not to speak, he explained that he used the apartment for privacy with his girlfriend. When he testified, Ciampi confirmed this explanation and stated that he had taken his girlfriend there only two times and had been there only a "couple" of times with Russo.

[4]The defendant does not argue that art. 12 provides greater protection than the Fifth Amendment.

counsel for a codefendant.[5] "The policy at work" in protecting a defendant from judicial and prosecutorial reference to his silence "is that of the privilege against self-incrimination." *Commonwealth* v. *Sherick, supra* at 342. The focus of review should be on whether a defendant has been prejudiced in his exercise of that privilege by direct or implicit comment on his failure to speak or testify and not upon the identity of the commentator, notwithstanding that counsel for a codefendant may not be perceived by jurors as being cloaked with the same authority as a judge or prosecutor. Accordingly, we discern no reason to withhold from a defendant protection from statements by a codefendant's counsel. See *United States* v. *Mena*, 863 F.2d 1522, 1533 (11th Cir. 1989), cert. denied, 493 U.S. 834 (1989) ("Judge Wisdom explained over twenty-five years ago that legitimate, non-excludable comment by counsel for one defendant may prejudice a codefendant's fifth-amendment privilege against self-incrimination, when counsel's remarks 'draw the jury's attention to the possible inference of guilt from a co-defendant's silence.' *DeLuna* v. *United States*, 308 F.2d 140, 141 [5th Cir. 1962]"); *State* v. *Gibbons*, 418 A.2d 830, 835-836 (R.I. 1980) ("Because the prejudice to an accused is the same regardless of who comments on his failure to testify, it is our opinion that for the same reasons that a prosecutor may not comment on an accused's election to remain silent, counsel for a codefendant also may not comment. Our primary concerns are the effect the comment is likely to have on the jury and the resulting prejudice to the rights of an accused. The identity of the person making the comment is not material").

Accordingly, the comments of Ciampi's counsel call for the same analytical inquiry as in the cases involving statements made by judges and prosecutors — whether the comments "can be fairly understood as permitting the jury to draw an inference

_____

[5]Since 1912, defendants in criminal cases have been afforded statutory protection from prosecutorial use of, or reference to or comment on, evidence that they did not testify at a preliminary hearing, or waived examination at that hearing, or did not offer evidence in defense. See G. L. c. 278, § 23. In *Commonwealth* v. *Hassan*, 235 Mass. 26, 33 (1920), it was stated that the statute was not applicable to "arguments made in behalf of a co-defendant." However, "[a]s the constitutional guarantees have been extended by interpretation to protect a defendant's 'silence' in the early stages of the criminal process, G. L. c. 278, § 23, has in effect been largely if not altogether overtaken by those guarantees." *Commonwealth* v. *Sherick*, 23 Mass. App. Ct. 338, 342-343 n.5 (1987).

adverse to the defendant from the fact of his failure to testify." *Commonwealth* v. *Goulet, supra* at 412. See *Commonwealth* v. *Gouveia,* 371 Mass. 566, 571 (1976); *Commonwealth* v. *Sherick, supra* at 344-345 n.7.[6] We necessarily examine the challenged remarks in a complete context.

The comments in issue are based on Ciampi's conduct at the time the police executed the search warrant, and do not contain any direct reference to the defendant. Neither the comments nor the testimony on which they are based expressly contrasted Ciampi's eagerness to explain his involvement in the leased apartment with Russo's pretrial silence or his decision not to testify. Also, there is no indication in the trial record that either Russo or Ciampi pursued defenses which tended to blame the other or which otherwise were antagonistic. "The privilege against self-incrimination of a co-defendant who does not choose to testify does not go so far as to deprive one who does so choose of effective argument in [his] behalf, so long as it is, as it was here, sensitive to the rights of others." *United States* v. *Bonfant,* 851 F.2d 12, 15 (1st Cir. 1988), quoting from *Varela Cartagena* v. *United States,* 397 F.2d 278, 280 (1st Cir. 1968).

To the extent the isolated comments could be construed as oblique and implicit references to Russo's silence, they were not so prejudicial as to withstand the curative effect of proper judicial instruction. Here, the judge carefully instructed the jury prior to the Commonwealth's opening statement that the defendants "have no responsibility to put on any evidence, to testify [or] to make an opening statement. . . ." She repeated the essence of those instructions during the course of the trial and comprehensively expanded upon them in her final instructions to the jury.[7] We also take into account the absence of any objection from Russo's experienced counsel to either the com-

---

[6] See also Annot., Comment on Accused's Failure to Testify by Counsel for Codefendant, 1 A.L.R.3d 989 (1965 & Supp. 1999); 75A Am. Jur. 2d Trial § 586 (1991 & Supp. 2000).

[7] After Russo's attorney requested an instruction on the subject of one defendant (Ciampi) testifying and the other (Russo) not testifying, the judge included the following in her final instructions:

"I am sure you have noticed that one defendant has testified and one defendant did not. As I had instructed several times in the course of the trial, and even prior to the trial, no defendant has any obligation to produce any evidence in a criminal trial. The reason is simple. Every person who is charged with a crime is presumed innocent until and when proven guilty. So the defendant has no obligation to take the

ments or the judge's instructions. See *Commonwealth* v. *Coyne*, 44 Mass. App. Ct. 1, 7 (1997). Even if we treat the comments as improper, these factors, coupled with the strength of the case against Russo,[8] lead us to conclude there was no substantial risk that his convictions constituted a miscarriage of justice.[9] *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). See *Commonwealth* v. *Lashway*, 36 Mass. App. Ct. 677, 682 (1994).

Also advanced on appeal is a claim of ineffectiveness of Russo's trial counsel for the failure to object to the comments of Ciampi's counsel, a claim not presented in Russo's motion for a new trial or taken up by the trial judge. We conclude that claim is waived. Mass.R.Crim.P. 30(c)(2), 378 Mass. 901 (1979). In any event, the defendant was not deprived of an "otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Where the asserted failure has not resulted in a substantial risk of a miscarriage of justice, we cannot conclude there has been ineffectiveness of counsel. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994).

*Claim of conflict of interest of Ciampi's counsel.* At the time

---

stand, to produce any evidence. He has no burden whatsoever. Keep in mind that I had said that if at any time any question posed by any attorney suggested some burden shifted to either defendant to introduce any evidence, disregard it.

"So in considering the case, you must do so based on the evidence. You cannot draw any inference which is adverse to the defendant who did not take the stand and testify, or for that matter, the defendant who did. You may, of course, and should, subject the defendant who did testify to the same kinds of evaluation as you do all witnesses. But you cannot in any way draw any inference which is adverse to defendant Russo from the fact that he did not testify."

[8]In addition to the large quantity of drugs and paraphernalia associated with distribution found in Russo's apartment and the alleged "stash pad," there was evidence that Russo paid the rent for the leased apartment which was minimally furnished and contained few necessities and that he was observed making numerous, but very brief, visits.

[9]No objection to the statements was made by the defendant at trial. While he raised this issue in his motion for a new trial, the judge did not address the merits of the issue. We therefore consider whether there was a substantial risk of a miscarriage of justice created by the statements. See *Commonwealth* v. *Sherick*, 401 Mass. 302, 303 (1987); *Commonwealth* v. *Hallet*, 427 Mass. 552, 554 (1998). See also *Commonwealth* v. *Sherick*, 23 Mass. App. Ct. 338, 346 (1987).

of his arrest, Russo communicated in confidence with an attorney, Mr. Joseph Machera, but he did not retain him as trial counsel. Mr. Machera had also consulted with Ciampi at that time and later represented him during the joint trial of Ciampi and Russo, with Mr. Joseph Balliro representing Russo. Renewing an argument he made in support of his motion for a new trial,[10] Russo claims that Mr. Machera experienced a conflict of interest as Ciampi's counsel which resulted in material prejudice to Russo during the joint trial. Although he maintains that the conflict was pervasive, he does not identify its precise form.[11]

"[T]he burden lies with the defendant to prove both the existence and precise character of an alleged conflict of interest if he wishes to vitiate the results of prior proceedings." *Commonwealth* v. *Soffen*, 377 Mass. 433, 437 (1979). Because their legal relationship was terminated before the beginning of adversary proceedings,[12] see *Commonwealth* v. *Jones*, 403 Mass. 279, 286-287 (1988), and Ciampi's attorney no longer owed Russo any continuing duty, and no other conflicting relationship is expressly identified, Russo fails to show the existence of an actual conflict of interest. *Commonwealth* v. *Soffen, supra* at 438. Moreover, as we have determined, the record does not indicate that the defenses of Ciampi and Russo were antagonistic.

Essentially conceding there is no actual conflict, Russo goes on to assert that he was prejudiced by the defense conducted at trial by Mr. Machera as Ciampi's counsel, see note 11, *supra.* He argues "that the prejudice he suffered cannot be fully defined

[10]This issue was raised in Russo's memorandum accompanying his motion for a new trial, but was not argued at the hearing held on that motion. The trial judge did not discuss this issue in her decision denying the motion. Accordingly, our review is conducted under the standard of *Commonwealth* v. *Hallet*, 427 Mass. 552, 554 (1998).

[11]In his memorandum in support of his new trial motion, Russo essentially argued that Ciampi's counsel advanced a defense adverse to Russo, using his privileged communications. He asserted he was prejudiced by such use of that unidentified information and by what he claims was its coercive effect preventing him from testifying at trial. On appeal Russo additionally claims the conflict only could have been remedied by severance, and was not cured when he retained another counsel for trial. Without specification, he also argues he was prejudiced by Mr. Machera's use or potential use of the privileged communications in examining witnesses.

[12]Russo also fails to indicate any failing or ineffective assistance of Mr. Machera at the scene of his arrest or until the time he discharged him prior to his bail hearing.

without requiring [him] to waive the attorney-client privilege." Assuming, in these circumstances, that Mr. Machera had a continuing duty with respect to Russo amounting to a potential conflict, Russo nevertheless must make a showing of actual prejudice. *Commonwealth* v. *Fogarty*, 419 Mass. 456, 459 (1995). He might be entitled to relief upon a showing that some identified conduct of Ciampi's defense was based on privileged information, resulting in material prejudice to Russo. Compare *Commonwealth* v. *Smith*, 362 Mass. 782, 783 (1973). Russo, however, does not claim that Mr. Machera violated the attorney-client privilege or any rule of professional conduct. Russo also does not indicate that he brought any conflict of interest concerns to the attention of the trial judge.[13] He points to nothing in the present record supporting his conclusory allegations of prejudice.[14] Being entirely speculative, Russo's assertions of prejudice accordingly are not susceptible of resolution in this appeal. Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975).

*Judgments affirmed.*[15]

*Order denying motion for new trial affirmed.*

---

[13]There is an apparent contradiction between Russo's assertion that Mr. Machera's representation of Ciampi had a coercive effect on him which prevented him from testifying, and Russo's affidavit accompanying his new trial motion stating he did not testify because his trial counsel "directed" him not to. However, there is nothing in the affidavit suggesting that the advice or strategy of his trial counsel was affected by knowledge that Mr. Machera may have possessed privileged information from Russo.

[14]In his argument on appeal, Russo's only evidentiary reference is to an affidavit of Mr. Machera, submitted at the hearing on his new trial motion, which states: "Although I did not intentionally use attorney client communications in crafting a defense for Mr. Ciampi, it may be that it would be humanly impossible for me to 'unring the bell' and erase from my knowledge information imparted to me by Salvatore Russo in the course of privileged communications once I ceased to represent Salvatore Russo." There is no indication that the judge credited this section of the affidavit or took it into account in her denial of the motion for a new trial.

[15]Several other arguments made by Russo raise no substantial questions of law and are of insufficient merit to warrant published discussion. We have addressed them in a memorandum and order pursuant to our rule 1:28. *Commonwealth* v. *Russo, post* 1118 (2000).