## COMMONWEALTH *vs.* EDY VALLEJO.

Middlesex. May 5, 2009. - September 30, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Constitutional Law,* Self-incrimination, Assistance of counsel. *Practice, Criminal,* Comment by codefendant's counsel, Assistance of counsel, Instructions to jury, Severance, Judicial discretion. *Global Positioning System Device.*

At a criminal trial, comments by the codefendant's counsel in her opening statement and closing argument regarding the codefendant's cooperation with police, as well as testimony in the same vein that the codefendant's counsel elicited from a police witness, could not fairly be understood as permitting the jury to draw an inference adverse to the defendant from any perceived pretrial silence. [75-82]

At a criminal trial involving two codefendants, the judge did not abuse her discretion in denying one defendant's motion to sever, made before trial, and his motion for a mistrial, made after closing arguments, which the judge treated as a renewal of his objection to the denial of the motion to sever, where the codefendant's counsel did not improperly comment on the defendant's silence in a way that violated the defendant's constitutional privilege against self-incrimination [82-83]; where the admission in evidence of the codefendant's statement to police did not expressly implicate the defendant in criminal activity or implicate the defendant when linked with other evidence adduced at trial, and the judge effectively instructed the jury that they could not consider the codefendant's statement as evidence against the defendant [83-84]; and where comments made by the codefendant's counsel during closing argument did not render the defendant's and codefendant's defenses mutually antagonistic and irreconcilable to such an extent that severance was required [84-89].

This court remanded a criminal matter for reconsideration of that portion of the defendant's sentence that imposed mandatory global positioning system monitoring as a condition of probation. [89-90]

INDICTMENT found and returned in the Superior Court Department on February 17, 2005.

A pretrial motion to suppress evidence was heard by *Peter M. Lauriat,* J., and the case was tried before *Diane M. Kottmyer,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert F. Shaw, Jr.,* for the defendant.

*Susanne R. Bines*, Assistant District Attorney (*Kevin J. Curtin*, Assistant District Attorney, with her) for the Commonwealth.

CORDY, J. Edy Vallejo and Gustavo Gomez were indicted for aggravated rape in violation of G. L. c. 265, § 22 (*a*). After a joint trial in the Superior Court, Vallejo was convicted of the lesser included offense of indecent assault and battery on a person over the age of fourteen in violation of G. L. c. 265, § 13H, and was sentenced to three years' probation with mandatory global positioning system (GPS) monitoring pursuant to G. L. c. 265, § 47. Gomez was convicted of the lesser included offense of assault and battery in violation of G. L. c. 265, § 13A. Vallejo appealed, and we transferred his appeal to this court on our own motion.

On appeal, Vallejo challenges his conviction on two grounds: first, that during the trial Gomez's counsel improperly commented on Vallejo's right to remain silent; and second, that the trial judge abused her discretion in denying Vallejo's motions for severance. Vallejo also argues that, in the event his conviction is affirmed, the GPS monitoring condition of his probationary sentence should be vacated because it violates the prohibition against ex post facto laws under the Federal and State Constitutions. We affirm Vallejo's conviction but remand the case for resentencing in light of our decision in *Commonwealth v. Cory*, 454 Mass. 559 (2009).

*Trial.* The jury heard the following evidence. On October 26, 2004, the victim[1] was walking to the Boys and Girls Club in Waltham to attend hockey practice when she saw her friend, Arturo Montoya, driving his Honda Civic automobile. She waved Montoya down and accepted a ride to the Boys and Girls Club. Three passengers, whom the victim described as her friends, were also in the vehicle. The victim got in the back seat of the vehicle between Vallejo, who was on her right, and Gomez, who was on her left, and put the bag she was carrying on her lap. Vallejo's brother, Freddy Vallejo,[2] sat in the front passenger seat. The victim and Montoya decided to stop at Wendy's to eat before driving to the Boys and Girls Club.

---

[1]At the time of trial in February, 2007, the victim was an eighteen year old high school senior.

[2]We refer to Freddy Vallejo as "Freddy" to distinguish him from the defendant, Edy Vallejo.

The victim testified that as Montoya started driving, Vallejo and Gomez began talking about her body. She initially interpreted this talk as "joking," as everyone in the car was joking and laughing at first. She further testified that at some point Gomez grabbed both of her hands and held them at her side while wrapping his right arm around her neck and covering her mouth with his right hand. The victim testified that Vallejo then "shov[ed] his hands down [her] pants" and "shoved two of his fingers in [her] vagina." The digital penetration lasted for about ten seconds and caused the victim to feel pain. After Gomez let her go and Vallejo removed his fingers from the victim's vagina, the victim testified that she hit both Gomez and Vallejo. Montoya and Freddy were apparently unaware of what happened because they were looking ahead as Montoya was driving. The victim did not say anything because she was scared and did not know what to do. The victim also testified that she was "mad" and "paranoid." The group then stopped at Wendy's and continued on to the Boys and Girls Club, where the victim was dropped off. At the Boys and Girls Club, the victim spoke to her hockey coach, Kelly McAvoy, about the incident. The victim testified that she told McAvoy that two of her good friends just sexually harassed her and that she described the incident for McAvoy.

McAvoy testified as a first complaint witness. She was working at the Boys and Girls Club when the victim arrived. She described the victim's demeanor as "out of character" in that she appeared more quiet and reserved and "a little more antsy" than usual. After about ten minutes passed, McAvoy asked the victim if she would like to talk, and eventually the two spoke in a private room, where the victim told McAvoy that she was joking around with Vallejo and Gomez in Montoya's automobile, but then things "got a little aggressive" and she became "uncomfortable." McAvoy testified further that the victim told her that one of the young men in the back seat was restraining her and another man took off her pants and put his fingers into her vagina. McAvoy then called the Waltham police department.

Detective John Quaranto of the Waltham police department testified about his investigation into the incident and the substance of his interview of Gomez at the Waltham police station. In that interview, Gomez stated that he was riding in the back seat of

Montoya's automobile with Vallejo when they encountered the victim, who entered the automobile and sat between Vallejo and Gomez. Gomez stated that the victim asked to stop at Wendy's before going to the Boys and Girls Club. Gomez further stated that Vallejo was tickling the victim and they were all joking around. Gomez also said that he never held the victim down or covered her mouth with his hand. Finally, Gomez described the victim as "mad" when she was dropped off at the Boys and Girls Club but said that he did not know why.

Vallejo testified in his defense.[3] According to Vallejo, after the victim entered the automobile she started talking to Gomez, and Vallejo joined in the conversation. The group then began "fooling around and joking." Vallejo was tickling the victim, who was laughing and moving as a result of her laughter. At that time, according to Vallejo's testimony, Gomez had his arm around the victim's shoulders in a manner that Vallejo described as "like hugging her." Vallejo testified that Gomez did not restrain the victim, and Vallejo denied saying anything about the victim's body. Vallejo testified that while he was tickling the victim, his fingers "just went like that around her pants" and he "felt her pants over [his] fingers" but he "pulled them out quickly." Vallejo testified that the victim stopped laughing and hit him after he pulled his fingers out. Nothing was said between Vallejo and the victim after that incident. Vallejo testified that when the victim was dropped off, she said to the group: "Wait the police are going to come looking for [you]." Finally, Vallejo denied unbuttoning or unzipping the victim's pants and denied touching the victim's vagina.

We refer to additional facts and evidence as they become relevant to the issues raised on appeal.

*Discussion.* 1. *Comments of codefendant's counsel.* Vallejo claims that he was prejudiced when, at several points during the trial, Gomez's counsel made direct or implied comment on his failure to speak to police, in violation of his constitutional right to remain silent. We examine each of the instances claimed by Vallejo as improper.

Each defendant separately made a statement to the police

---

[3]Gomez did not testify; Vallejo was the only witness called by either defendant.

regarding the October, 2004, incident; Vallejo made his statement after he was arrested, and Gomez made his before his arrest. Vallejo moved to suppress his statement and, after a hearing, his motion was allowed. As explained above, Gomez's statement was admitted in evidence at trial through Detective Quaranto's testimony.

During her opening statement, Gomez's trial counsel made the following remarks about what she expected the evidence would be:

> "A few days [after the incident Gomez] was contacted by the Waltham Police Department, they wanted to ask him about that night. So, he went in and told them what he saw, what he did, and what he knew. The officer told him he didn't have to talk to him, he could refuse to answer any question at any time, and he had the right to have a lawyer there if he wanted, but he chose to talk to them. He was cooperative, he answered all of their questions, and he answered them without hesitation. He had nothing to hide."

At a sidebar conference immediately after counsel for Gomez finished her opening statement, Vallejo's attorney expressed concern about the quoted portion of Gomez's opening statement, stating, "My sister made a big deal of her client's giving his statement to the police, and of course my client's statement has been suppressed, also it leaves the jury with the impression that if someone doesn't give their statement to the police there's a question of guilt there; that was the argument." Vallejo's attorney then asked the judge to instruct the jury "[n]ot to draw any conclusions for or against [Vallejo]" on the basis that he did not make a statement to police. The judge denied the request for an instruction, concluding that it would be inappropriate at this time because "there's no evidence before the jury that anyone tried to speak to [Vallejo]."[4] Vallejo's counsel agreed and responded,

---

[4]The judge also indicated that she would instruct the jury during her final charge about a defendant's right not to testify or produce evidence. In her final charge, the judge instructed the jury about the presumption of innocence and explained that a criminal defendant has no burden to produce any evidence. She also explained that the jury could not base their verdict on "suspicion, speculation, or conjecture, but only on evidence that was produced and admit-

"That's fine," and made no further objections to Gomez's opening or requested any further limiting instructions.

When Detective Quaranto was testifying on direct examination about his interview of Montoya, the judge called for a sidebar conference, at which time she instructed the Commonwealth to avoid asking about statements made to police by anyone other than Gomez to avoid "highlighting the fact that by implication . . . Vallejo refused to speak with" the police. Later, immediately before cross-examining Detective Quaranto, Gomez's counsel notified the judge at sidebar that she would be asking about the voluntary and cooperative nature of Gomez's statement to police. There was no objection. Then, through questioning, Gomez's counsel elicited testimony from Detective Quaranto that Gomez agreed to go to the police station for an interview; was read his Miranda rights at the police station; and decided to speak with the police officers. Detective Quaranto agreed that Gomez was "entirely cooperative," made eye contact with the interviewing officers, and answered all of their questions "without hesitation." Vallejo did not object to any of the questions asked during this examination.

At the jury charge conference conducted after the close of the evidence, Vallejo's counsel reiterated the concern he initially expressed after Gomez's opening statement. He told the judge that Gomez's counsel had implied that the police talked to Vallejo, and that "[m]y sister could emphasize in closing I think about how cooperative [her] client was. I want a chance to submit some thing to you by tomorrow." The judge told counsel to submit a request for an instruction she might give the jury, but Vallejo's counsel never did so.

During closing argument, Gomez's counsel argued as follows:

"[Gomez] came to the police station on his own. He told them what he saw, what he did, and what he knew. He answered all their questions. He looked those officers

ted" in court. The judge instructed the jury further that the fact that a defendant has been arrested may not be regarded as incriminating or creating an unfavorable impression against him. Finally, the judge gave an instruction on a defendant's right not to testify at trial, focusing her instruction on Gomez because Gomez elected not to testify.

in the eye. He did not hesitate. He did not pause to think. He didn't have to come up with anything because he told the truth. He had nothing to hide. And after he told Detective Quaranto his story, the officer let him go."

Vallejo's counsel did not object to this argument or renew his request for an instruction.

Citing these portions of the trial record, Vallejo now argues that Gomez's trial counsel improperly commented on, and "employed tactics" that violated, Vallejo's constitutional right to remain silent under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. In making this argument, Vallejo relies principally on the Appeals Court decision in *Commonwealth* v. *Russo*, 49 Mass. App. Ct. 579 (2000) (*Russo*).

In *Russo*, codefendant's counsel commented during his opening statement on the fact that his client would testify at trial and emphasized, both then and in closing argument, that he voluntarily offered information when questioned by the police in spite of his constitutional right not to do so. *Id.* at 580-581.[5] The defendant, Russo, did not testify at trial; there was police testimony that he was arrested and read his rights, but no evidence of his response. *Id.* at 581. On appeal, Russo argued that his codefendant's counsel's statements constituted impermissible comment on his failure to testify at trial. *Id.*

The Appeals Court held that the constitutional protection afforded to defendants in cases involving comments made by judges or prosecutors about a defendant's silence extends to statements made by counsel for a codefendant. *Id.* at 581-582. Specifically, the court stated that "[t]he focus of review should be on whether a defendant has been prejudiced in his exercise of th[e] privilege [against self-incrimination] by direct or implicit

---

[5]Counsel's comment during his opening statement was as follows: "Finally, you will hear from my client. My client will take the stand, as he did that time with the police officer, and he spoke. He didn't hide. When the police officer said, 'you have a right to remain silent,' he spoke to him; and he's going to speak to you today." *Commonwealth* v. *Russo*, 49 Mass. App. Ct. 579, 580 (2000) (*Russo*).

Counsel's comment during summation was as follows: "He didn't say he wasn't going to talk to [the police]. He didn't say he was going to take his Fifth Amendment rights. He talked." *Id.* at 581.

comment on his failure to speak or testify and not upon the identity of the commentator, notwithstanding that counsel for a codefendant may not be perceived by jurors as being cloaked with the same authority as a judge or prosecutor." *Id.* at 582. "Accordingly, the comments of [codefendant's] counsel call for the same analytical inquiry as in the cases involving statements made by judges and prosecutors — whether the comments 'can be fairly understood as permitting the jury to draw an inference adverse to the defendant from the fact of his failure to testify.' " *Id.* at 582-583, quoting *Commonwealth* v. *Goulet*, 374 Mass. 404, 412 (1978).

Applying those principles, and viewing the challenged remarks in context, the Appeals Court affirmed Russo's conviction, *Russo, supra* at 583-584, 586, reasoning that the comments contained no direct reference to Russo and neither the comments, nor the testimony on which they were based, contrasted the codefendant's willingness to speak to the police with Russo's pretrial silence or his decision not to testify. *Id.* at 583. To the extent that "isolated" comments could be deemed as "oblique and implicit references to Russo's silence, they were not so prejudicial as to withstand the curative effect of [a] proper judicial instruction," *id.*, which was given.[6]

A number of other jurisdictions have recognized in some form the principle recognized in the *Russo* case.[7] See, e.g., Annot., Comment on Accused's Failure to Testify, by Counsel

---

[6]The court also concluded that even if it were to treat the comments as improper, there was no substantial risk of a miscarriage of justice in light of the factors discussed above and the strength of the case against Russo. *Russo, supra* at 584.

[7]The *Russo* case is the only Massachusetts appellate decision that has addressed whether comments made by counsel for a codefendant about another defendant's silence violate that defendant's constitutional privilege against self-incrimination. In *Commonwealth* v. *Hassan*, 235 Mass. 26, 33 (1920), we held that the prohibition in G. L. c. 278, § 23, inserted by St. 1912, c. 325, against reference by an "other prosecuting officer" to a defendant's failure to testify, waiver of examination, or failure to offer evidence in his defense at a preliminary hearing, "does not apply to arguments made in behalf of a codefendant." As the Appeals Court recognized, however, "[a]s the constitutional guarantees have been extended by interpretation to protect a defendant's 'silence' in the early stages of the criminal process, G. L. c. 278, § 23, has in effect been largely if not altogether overtaken by those guarantees." *Russo, supra* at 582 n.5, quoting *Commonwealth* v. *Sherick*, 23 Mass. App. Ct. 338, 342-343 n.5 (1987).

for Codefendant, 1 A.L.R.3d 989 (1965 & Supp. 2009); 75A Am. Jur. 2d Trial § 490 (2007 & Supp. 2009). See also *People* v. *Hardy*, 2 Cal. 4th 86, 157, cert. denied, 506 U.S. 987 (1992) (collecting cases). Perhaps the leading Federal case is *De Luna* v. *United States*, 308 F.2d 140, 141 (5th Cir. 1962), in which the United States Court of Appeals for the Fifth Circuit held that "an accused has a constitutionally guaranteed right of silence free from prejudicial comments, even when they come only from a co-defendant's attorney." The *De Luna* court reversed the defendant's conviction and remanded the case for a new and separate trial because the codefendant's counsel expressly contrasted the codefendant's willingness to testify at trial with the defendant's failure to do the same. *Id.* at 142-143, 155. Other jurisdictions have recognized that "the identity of the speaker can make a difference when determining whether an improper remark was harmless beyond a reasonable doubt. Thus a comment alluding to the silence of a defendant that would require reversal if made by a prosecutor may be deemed harmless, or even not error, if made by a codefendant's attorney." 75A Am. Jur. 2d Trial, *supra* at § 490, at 97. See, e.g., *United States* v. *Vera*, 701 F.2d 1349, 1363 (11th Cir. 1983) ("mere favorable observation of the willingness of one of several co-defendants to testify does not constitute an impermissible comment on the failure of the other co-defendants to testify"); *People* v. *Hardy*, *supra* at 158 ("[R]ule permits a codefendant to emphasize to the jury that *his* credibility is strong because he took the stand and submitted to cross-examination. In addition, if such argument indirectly or obliquely refers to a codefendant's silence, the error is generally found harmless"). See also *Russo*, *supra* at 583, quoting *United States* v. *Bonfant*, 851 F.2d 12, 15 (1st Cir. 1988) ("privilege against self-incrimination of a co-defendant who does not choose to testify does not go so far as to deprive one who does so choose of effective argument in [his] behalf, so long as it is . . . sensitive to the rights of others").

We accept the principle that a defendant may be prejudiced in the exercise of his privilege against self-incrimination by the actions and comment of his codefendant's counsel.[8] We do not,

---

[8]The Commonwealth does not challenge this principle on appeal.

however, need to map the precise contours of the application of that principle in deciding this case.

We analyze the challenged remarks in context, as we would for comments made by a judge or prosecutor, that is, "whether the comments 'can be fairly understood as permitting the jury to draw an inference adverse to the defendant from the fact of his [silence].' " *Russo, supra* at 582-583, quoting *Commonwealth* v. *Goulet,* 374 Mass. 404, 412 (1978).[9] The challenged comments and testimony do not contain any direct reference to Vallejo nor do they expressly contrast Gomez's willingness to speak to the police with Vallejo's apparent unwillingness to do so. See *Russo, supra* at 583. When viewed in context, it becomes clear that in her opening statement and closing argument Gomez's counsel was attempting to bolster Gomez's credibility and contrast it with the *victim's* alleged lack of credibility. Gomez's counsel's cross-examination of Detective Quaranto simply established the evidentiary basis for this argument. Additionally, Vallejo testified in his own defense at trial. This fact significantly diminishes any potential adverse inference that the jury could have drawn based on Vallejo's perceived pretrial silence. Further, the jury heard no evidence of Vallejo's arrest, or of his being informed of the Miranda warnings, or even that the police had tried to speak with him. Accordingly, there was no evidentiary basis from which the jury could conclude that Vallejo declined to speak to the police, let alone speculate as to the reason for his declining to do so. We also take into account Vallejo's counsel's withdrawal of his objection after Gomez's opening statement, the lack of any objection during cross-examination of Detective Quaranto, the failure to submit a request for instruction after the close of evidence, and the failure to object to Gomez's counsel's closing argument. Cf. *Commonwealth* v. *Montez,* 450 Mass. 736, 748 (2008), quoting *Commonwealth* v. *Toro,* 395 Mass. 354, 360 (1985) ("absence of [an objection on this precise point and the absence of a request for a curative instruction] from experienced counsel is some indication that the . . . substance of the now

---

[9]Where, as here, any objection to the remarks was waived, we would review any errors to determine whether they posed a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Rodriguez,* 450 Mass. 302, 309 (2007).

challenged aspects of the prosecutor's argument were not unfairly prejudicial"). In sum, we are not persuaded that Gomez's counsel's comments could be fairly understood as permitting the jury to draw an inference adverse to Vallejo from any perceived pretrial silence.

2. *Severance.* Before trial Vallejo filed a motion to sever his trial from Gomez's, with a supporting affidavit, pursuant to Mass. R. Crim. P. 9 (d) (2), 378 Mass. 859 (1979). The stated grounds for severance were that "Gomez's trial strategy will be aimed at redirecting any culpability from himself onto Vallejo," and "the Commonwealth itself will place much more emphasis at trial on [Vallejo's] culpability than that of [Gomez]." This, Vallejo claimed, "may cause the jury to view the question of [Vallejo's] guilt or innocence as a comparative one vis-à-vis Gomez." In his affidavit, Vallejo's attorney repeated these grounds and also stated that Gomez "will testify, at a minimum, that he does not know what Vallejo did and could not see because it was dark at the time of the incident. His testimony is likely to cause the jury to see the question of Vallejo's guilt or innocence in a light of comparison with Gomez."

The judge addressed the motion to sever on the first day of trial, before jury selection began. At that time, counsel for Vallejo raised an additional ground for severance. He explained that he now believed that Gomez would testify that when Gomez asked Vallejo if he did what he was accused of doing, Vallejo did not respond, that the jury might view this as an admission by silence, and that this in turn would lead to inconsistent defenses. The judge ruled that she would not permit codefendant's counsel to elicit this testimony from Gomez and denied Vallejo's motion for severance. The judge also acknowledged that she viewed "severance [as] an issue that the Court has to address continuously throughout the trial" and noted that she was "aware of [her] responsibility to revisit the issue throughout the trial in the event that it does appear that either defendant is being prejudiced . . . unfairly by the fact of a joint trial."

Vallejo did not raise the issue of severance again until after closing arguments. At that time, Vallejo's counsel moved for a mistrial on the ground that in her closing argument, counsel for Gomez "adopted a prosecutorial position with respect to

[Vallejo]" that resulted in an inconsistent defense. The judge treated this as a renewal of Vallejo's objection to the denial of his motion to sever and did not change her ruling.

Vallejo argues on appeal that the denial of his motions to sever constituted an abuse of discretion because (1) counsel for Gomez "repeatedly and improperly" commented on Vallejo's silence in a way that violated his privilege against self-incrimination; (2) Gomez's statement to the police was admitted in evidence without the opportunity for cross-examination by Vallejo, in violation of *Bruton* v. *United States*, 391 U.S. 123 (1968) (*Bruton*), and *Crawford* v. *Washington*, 541 U.S. 36 (2004) (*Crawford*); and (3) Gomez's defense was antagonistic to Vallejo and culminated in what Vallejo deems a "prosecutorial argument" urging the jury to find Vallejo guilty. We address each of these arguments in turn.

a. *Comments of codefendant's counsel.* We need not belabor the alleged improper comments of Gomez's counsel. While statements that directly or implicitly comment on a defendant's failure to speak or testify are a factor that a trial judge should take into consideration when deciding a motion for severance, the statements made by Gomez's counsel do not require severance because, as we have already explained, these statements did not violate Vallejo's constitutional privilege against self-incrimination.

b. *The* Bruton *issue.* Vallejo argues that the "admission and exploitation" of Gomez's statement to police without an opportunity for Vallejo to cross-examine him violated his constitutional right of confrontation, creating additional prejudice that required a severance. We disagree.

Gomez's statement, of course, was admitted only as evidence against Gomez, and the jury were so instructed. However, " '[w]here a nontestifying codefendant's statement "expressly implicate[s]" the defendant, leaving no doubt that it would prove to be "powerfully incriminating," the confrontation clause of the Sixth Amendment [to the United States Constitution] has been offended,' notwithstanding any limiting instruction by the judge that the jury may consider the statement only against the codefendant." *Commonwealth* v. *McAfee*, 430 Mass. 483, 488 (1999), quoting *Commonwealth* v. *Blake*, 428 Mass. 57, 60

(1998). When a codefendant's statement does not expressly implicate the defendant but becomes inculpatory "when linked with other evidence adduced at trial, generally a limiting instruction is sufficient to cure a violation of the defendant's confrontation rights." *Commonwealth* v. *McAfee, supra.* "A judge's limiting instruction may at some point prove ineffective to obviate confrontation clause concerns, but this point is reached 'only where the circumstances of the case and the nature of the codefendant's statement so obviously implicate the defendant in the crime itself as virtually to constitute direct incrimination.'" *Id.,* quoting *Commonwealth* v. *Blake, supra.*

Gomez's statement did not expressly implicate Vallejo in criminal activity, nor did it implicate Vallejo when linked with other evidence adduced at trial. Vallejo was admittedly sitting in the backseat of the automobile with the victim and Gomez and was admittedly tickling her and joking around when the touching occurred. This was the essence of Gomez's statement. Even if we were to conclude that Gomez's statement implicated Vallejo in some way when linked with other evidence at trial, the judge's limiting instructions were sufficient to cure any prejudice to Vallejo.

Immediately before the introduction of Gomez's statement, the judge instructed the jury that they could consider Gomez's statement as evidence against Gomez only and could not consider his statement as evidence against Vallejo in any circumstances. The judge repeated this instruction during her final charge. "Jurors are presumed to follow a judge's instructions, including instructions to disregard certain testimony." *Commonwealth* v. *Williams,* 450 Mass. 645, 651 (2008). Because the judge effectively instructed the jury that Gomez's statement was not to be considered against Vallejo, there was no violation of Vallejo's rights under *Bruton* or *Crawford.*[10] Accordingly, the admission of Gomez's statement did not require the judge to grant Vallejo's motion for severance.

c. *Mutually antagonistic defenses.* While conceding that the defenses of Gomez and Vallejo as presented during the eviden-

---

[10]Any error in this regard also would be harmless beyond a reasonable doubt where Gomez's statement essentially matched Vallejo's own testimony at trial.

tiary phase of the trial were not inconsistent,[11] Vallejo's principal argument focuses on Gomez's counsel's closing argument, which Vallejo claims reflects the "culmination of [Gomez's] trial strategy."

The thrust of Gomez's closing argument was that Gomez was not guilty because he did not know what happened between the victim and Vallejo and, to the extent that the victim implicated Gomez, she was not credible.

Counsel for Gomez began her argument by stating that Gomez "is innocent because he did not make a plan with [Vallejo] for him to assault [the victim]. He is innocent because he did not assist [Vallejo] in any way." She then launched into a discussion of why the victim would say that Gomez was involved if he was not. Counsel argued that the victim trusted the occupants of Montoya's automobile but "that trust was shattered by [Vallejo]"; that "[Vallejo] went too far, and he took advantage of the light situation"; that the victim "became paranoid that it wasn't just [Vallejo] who hurt her"; and that "[s]he started believing that everyone was involved." Counsel further argued that the victim, who was a star athlete at her high school, blamed Gomez for restraining her to explain to herself why she did not fight back. "Like anyone else, she would have been asking herself why she didn't do anything. Why she didn't say anything. Why she let this happen. Why she trusted [Vallejo]. So many questions to torture herself over." Counsel pointed out that, before the victim spoke to Coach McAvoy, she had time "to construct a story that she could live with, a story that made it impossible for her to do anything to stop [Vallejo], a story that explained to herself how she could have let this happen . . . and that story was that . . . [Gomez] prevented her[] from defending her[self]."

Counsel then spent the bulk of her argument time explaining

[11]When arguing for a mistrial or severance after closing arguments, Vallejo's trial counsel acknowledged that "the defenses ha[d] not been inconsistent" up to the point of Gomez's closing argument, and that "during the course of the trial itself the evidence was not presented in a contradictory fashion." Vallejo's appellate counsel conceded in his brief before this court that "the evidence at trial (prior to closings) did not reveal outright accusations from Gomez against Vallejo," and admitted at oral argument before us that the evidence at trial was "fairly neutral."

to the jury why they should not believe the victim's allegations about Gomez's involvement in the incident. Counsel challenged the victim's credibility by highlighting various inconsistencies between her testimony and prior statements she made to law enforcement authorities and to McAvoy. Counsel then argued that "[s]he cannot tell you consistently and credibility [*sic*] what was said because this was not a planned event between two boys. [Vallejo] acted alone. And she wants to believe that she was outnumbered."

Gomez's counsel then emphasized Gomez's statement to police, in which Gomez stated that he did not know what happened between the victim and Vallejo. Counsel attempted to bolster Gomez's credibility by emphasizing that Gomez gave his statement voluntarily and acted in a cooperative manner while being interviewed by the police. Finally, counsel concluded as follows:

> "Ladies and gentlemen . . . Gomez is innocent. He did not rape [the victim]. He did not assault [the victim], and he did not help Edy Vallejo assault [the victim]. For [the victim] [Gomez] is a character in a story that she had to tell herself to heal and to move on, and no one can fault her for that. I'm not faulting her for that. But for you, ladies and gentlemen, [Gomez] is not simply a character. He's a young man who stands before you innocent of this charge, and that is why I am asking you to find him not guilty."

"Absent a constitutional requirement for severance, joinder and severance are matters committed to the sound discretion of the trial judge." *Commonwealth* v. *McAfee*, 430 Mass. 483, 485 (1999). "A judge's refusal to allow a timely motion for severance constitutes an abuse of discretion when 'the prejudice resulting from a joint trial is so compelling that it prevents a defendant from obtaining a fair trial.' " *Id.* at 486, quoting *Commonwealth* v. *Moran*, 387 Mass. 644, 658 (1982). "In order for such compelling prejudice to arise, it is not enough that the defendants are hostile to one another or that one defendant would have a better chance of acquittal if tried alone." *Commonwealth* v. *McAfee, supra.* "Rather, severance is mandated

*only if* their defenses conflict to the point of being *mutually antagonistic and irreconcilable*" (emphasis added). *Id.*

The judge did not abuse her discretion in denying Vallejo's motion for a mistrial, which the judge treated as a renewal of Vallejo's objection to the denial of his motion to sever. See *Commonwealth* v. *Jaime*, 433 Mass. 575, 579 (2001), quoting *Commonwealth* v. *Medeiros*, 395 Mass. 336, 351 (1985) ("In order to find an abuse of discretion, 'it is necessary to decide that no conscientious judge, acting intelligently, could honestly have taken the view expressed by him' "). Vallejo's defense was essentially that any indecent touching that occurred while he was tickling the victim was accidental. He admitted at trial that his hand went under the victim's pants, but he claimed that this was an accident.[12] During his closing argument, counsel for Vallejo reiterated Vallejo's claim that if he touched the victim underneath her pants it was an accident. Gomez's counsel's closing argument centered on two themes. One theme was discrediting the victim's testimony while bolstering the credibility of Gomez's exculpatory statement to police. The second theme was explaining why the victim would claim that Gomez was involved in the incident if he was not. While Gomez's counsel did discuss evidence of Vallejo's role in the incident during her closing argument, the essence of Gomez's argument was that he had nothing to do with any alleged assault that Vallejo may have committed against the victim. (As noted, this argument was made only after Vallejo had testified that he had touched the victim's underwear [albeit accidentally while tickling her], and after Vallejo's counsel had reiterated that claim during his closing argument.) This argument did not render Vallejo's and Gomez's defenses mutually antagonistic and irreconcilable to such an extent that a severance was required. See *Commonwealth* v. *McAfee, supra* at 486 ("this was not a case where each defendant was pitted against the other or sought to escape conviction by blaming his codefendant").

Moreover, even if their defenses could be construed as antagonistic, they were not irreconcilable, and "the judge's refusal to grant severance . . . did not result in substantial prejudice to

[12]Vallejo also claimed that he did not digitally penetrate the victim, a claim that the jury apparently found credible.

either defendant." *Id.* at 487. "Unlike in *Commonwealth* v. *Moran, supra* at 654, 660, where the prosecution had no eyewitnesses to the crime who could testify to the presence and participation of both defendants and therefore had to rely on each inculpating the other, here the Commonwealth had an eyewitness [i.e., the victim] who testified that both defendants participated in the [assault]. Accordingly, the jury had the option to disbelieve both defendants' proffered defenses and to credit the testimony of the eyewitness instead. In such circumstances, we have held that any prejudice that might have resulted from a failure to sever was not sufficiently compelling to warrant appellate relief." *Id.,* and cases cited. The situation in the *Moran* case was that the "only realistic escape for either defendant was to blame the other" because the "Commonwealth introduced convincing evidence that at least one defendant, but not necessarily both of them, robbed and killed [the victim]." *Commonwealth* v. *Moran, supra* at 659. The difference here is that the victim specifically identified the role that each defendant played in the crime: Vallejo digitally penetrated the victim while Gomez restrained her. In these circumstances, the jury would not "feel compelled to choose between defendants rather than to assess the proof against each defendant separately." *Id.* See K.B. Smith, Criminal Practice and Procedure § 20.31, at 188 & n.5 (3d ed. 2007 & Supp. 2008), and cases cited ("The true level of alleged antagonism between the defenses is measured, on appeal, by the evidence actually at trial. Any prejudice may be obviated by eyewitness testimony which strongly implicates both defendants"). See also 5 W.R. LaFave, J.H. Israel, N.J. King, & O.S. Kerr, Criminal Procedure § 17.2(d), at 39 (2007), quoting *United States* v. *Hutul,* 416 F.2d 607, 620 (7th Cir. 1969), cert. denied, 396 U.S. 1007, 396 U.S. 1012, and 396 U.S. 1024 (1970) ("It is common doctrine that a severance is necessary only if the defenses are mutually exclusive [i.e., that belief of one compels disbelief of the other], and that the 'mere fact that there is hostility between defendants or that one may try to save himself at the expense of another is in itself alone not sufficient grounds to require separate trials' ").

Finally, Vallejo points to *Commonwealth* v. *McAfee, supra* at 486-487 n.1, to support his claim that a severance was required

because Gomez's counsel "undermine[d]" his defense in her closing argument. In that case, we said that when a severance issue arises in the context of a closing argument, a request for severance may be denied if the closing argument "accurately summarizes the Commonwealth's evidence against the defendant and does not undermine that defendant's theory of defense." *Id.* Because the codefendant's counsel's remarks in closing argument in the *McAfee* case "were entirely consistent with the defendant's theory" that he had been misidentified, *id.*, we did not have occasion to define the circumstances in which a request for severance must be granted when the issue arises during closing argument. Nor did we have occasion to do so in *Commonwealth* v. *Hamilton*, 426 Mass. 67, 74 (1997) (codefendant's argument not inconsistent with defendant's claim of misidentification), which the *McAfee* decision cites for the proposition quoted above. We see no reason to apply a different standard when the grounds for severance arise during closing argument as opposed to during the evidentiary phase of the trial. As we have already explained, Vallejo and Gomez were not pitted against each other in such a way that the jury would be compelled to choose between the two defendants rather than to assess the proof against each defendant separately.

In sum, the judge did not abuse her discretion, because any prejudice resulting from the joint trial of Vallejo and Gomez was not so compelling as to prevent Vallejo from obtaining a fair trial.

3. *GPS monitoring.* Vallejo was sentenced to a three-year period of probation, during which he was required to wear a GPS monitoring device as mandated by G. L. c. 265, § 47. The Commonwealth does not dispute that the reason the judge imposed GPS monitoring in this case was that she was required to do so under the statute. Moreover, it is undisputed that Vallejo committed the offense of which he was convicted before the effective date of G. L. c. 265, § 47.[13] As a result, the case must be remanded for resentencing in light of our decision in *Commonwealth* v. *Cory*, 454 Mass. 559 (2009). On remand, the

[13]The offense of which Vallejo was convicted occurred on October 26, 2004, and G. L. c. 265, § 47, became effective on December 20, 2006. See St. 2006, c. 303, § 8.

judge must vacate that portion of Vallejo's sentence imposing GPS monitoring, unless in the exercise of the judge's discretion she determines that GPS monitoring is an appropriate condition of Vallejo's probation.

*Conclusion.* The judgment of conviction is affirmed, and the case is remanded for resentencing in light of *Commonwealth* v. *Cory, supra.*

*So ordered.*